HAROLD BROWN *vs*. DAVID LeCLAIR.   September 11, 1985. *Landlord and Tenant*, Habitability, Rent. *Damages*, Consumer protection case. *Consumer Protection Act*, Landlord and tenant, Damages. *Evidence*, Value.

In September, 1981, Harold Brown, landlord of premises occupied by David LeClair, filed a summary process action in the Boston Housing Court

against LeClair for nonpayment of rent. On June 3, 1982, LeClair filed an amended answer in the summary process action in which he raised defenses and made counterclaims alleging: (1) breach of the implied warranty of habitability; (2) breach of the covenant of quiet enjoyment;[1] (3) intentional infliction of emotional distress; (4) negligence; and (5) violation of G. L. c. 93A.[2]

In March of 1983, a hearing on LeClair's counterclaims was held.[3] After receiving documentary evidence as well as hearing testimony from Brown's property manager, from a previous tenant of LeClair's apartment, from LeClair, and from a witness who photographed the premises, the judge found in favor of LeClair on four of his counterclaims and found for Brown on the claim for intentional infliction of emotional distress. Damages were awarded under G. L. c. 93A, the judge concluding that his findings of negligence and of breach of the implied warranty of habitability, and of G. L. c. 186, § 14, "also constitute a violation of G. L. c. 93A." The judge trebled the damages on the ground that Brown's violations were "wilful and knowing." He also found that "the landlord did not make a good faith offer of settlement."

Brown claims error in the judge's award of actual and treble damages under G. L. c. 93A, § 9(3), arguing that the evidence was insufficient to support the judge's findings and that the award did not disclose the basis on which damages were computed.

1. *Abatement of rent.* In calculating damages under G. L. c. 93A, the judge followed the method prescribed by *Wolfberg* v. *Hunter,* 385 Mass. 390, 399-400 (1982).[4] He abated the rent for a period from the inception of the lease until April, 1982. The judge found that LeClair made no complaints after that date.[5]

---

[1] G. L. c. 186, § 14.

[2] The primary conditions complained of were leaking ceilings, cockroach infestation, banging of pipes, and a door which provided no security. Other defective conditions reported by LeClair (some of which were also found by the housing inspection department of the city of Boston to be violations of the Sanitary Code) included the poor condition of kitchen cabinets and countertops and stained, broken and sagging ceiling tiles.

[3] Brown's complaint was the subject of a stipulation and is not relevant to the present appeal.

[4] The fair rental value of the apartment from November, 1979, to March, 1983, was $9,055, a sum equivalent to the contract rate for that time period. LeClair paid Brown $8,255 in rent for the same time period, the $800 difference reflecting rent withheld by LeClair between October 1, 1981, and December, 1982. The judge found that the value of the apartment "was reduced by $1,175 as a result of the conditions." The judge also awarded LeClair $790 in damages for property loss and $1,000 for the assault and battery discussed in part 3, *infra.* The three items total $2,965, which sum was tripled, for a total of $8,895. From that amount, the $800 of withheld rent was deducted, leaving a total award, apart from counsel fees, of $8,095.

[5] In April, 1982, Brown received a report of an inspection of the premises conducted by the housing inspection department of the city of Boston at LeClair's behest.

Brown argues that because there was no evidence that LeClair complained about leaks or banging pipes between March 27, 1980,[6] and October 1, 1981,[7] or complained of cockroaches between October 1, 1981, and April, 1982, rent should not have been abated for those defects during those time periods. Brown also suggests that the rent should not have been abated due to cockroaches because Brown always responded to LeClair's complaints of bugs by spraying parts of the apartment. There is no merit to either argument.

The judge found that at the inception of LeClair's tenancy there were a number of violations of the State Sanitary Code and that these problems had caused the prior tenant to vacate the premises after living there a few months. He also found that the landlord was repeatedly notified of the ongoing leaks and other problems on several occasions, and that, despite these complaints, the leakage and the roach problem remained uncorrected through April, 1982. LeClair testified that he complained about leaks "throughout the tenancy" or "through . . . fall '81." There is no set rule as to the number of times a tenant must complain of a matter which remains unrepaired in order to preserve his right to an abatement. The judge's findings are not clearly erroneous.

With respect to Brown's argument that his prompt — albeit ineffective — response to LeClair's complaints of insects should be considered in determining the amount of the abatement, it is settled that a landlord's attempts to repair defective conditions in an apartment have no bearing on the calculation of a rent abatement for the time periods during which the defects persist. *Berman & Sons* v. *Jefferson,* 379 Mass. 196, 198 (1979).

Citing *McKenna* v. *Begin,* 5 Mass. App. Ct. 304 (1977), Brown also argues that the award of an abatement of $1,175 is defective because the judge neither used a percentage reduction formula in calculating the amount nor specified the extent to which each alleged violation diminished the tenant's use and enjoyment of the premises.

The fact that the reduction was expressed in a dollar amount, rather than as a percentage, does not require a remand. Although it would have been preferable for the judge to give a more detailed explanation of his calculations, damages in rent abatement cases are not capable of precise measurement. "While the damages may not be determined by speculation or guess, an approximate result is permissible if the evidence shows the extent of damages to be a matter of just and reasonable inference." *McKenna,* 5 Mass. App. Ct. at 311. Because the record supports an award of an abatement in at least the sum found, there is no unfairness to Brown in sustaining the award.

---

[6] On March 27, 1980, LeClair sent Brown a letter notifying him of an intention to withold rent for 30 days due to "(1) incessant leakage from ceiling and (2) mournful nocturnal banging of heating pipes."

[7] On October 1, 1981, LeClair sent Brown a letter noting continuing problems with leaks and cockroaches.

2. *Property Damage.* Brown challenges the judge's award of $790 for property loss occasioned by a January 31, 1980, flood. LeClair testified that the value of various items of damaged property amounted to more than that figure.

The judge, in his discretion, could allow LeClair to testify as to the property's value. *Kenney* v. *Rust,* 17 Mass. App. Ct. 699, 704 (1984). In addition, "[w]here the value of common articles of clothing and household furnishings is at issue, 'it is proper for the . . . judge . . . to have recourse to his . . . own knowledge and experience in considering the evidence and determining the value of the property.' " *Id.* at 705.

3. *Assault and Battery.* Brown attacks the judge's award of $1,000 for the injuries received from an assault and battery. These damages were based on a September, 1980, incident in which LeClair was assaulted with a knife by a neighbor after the neighbor punched a hole through LeClair's hollow core front door and entered his apartment. The judge found that the construction of the door to LeClair's apartment did not provide adequate security and was in violation of the State Sanitary Code. See c. II of the State Sanitary Code, 105 Code Mass. Reg. 410.000 et seq. (1980); Regulations of the Attorney General, 940 Code Mass. Regs. § 3.16(3) (1978). There was evidence that the door was of flimsy construction. The question whether the requisite causal connection has been shown is one of fact. *DiMarzo* v. *American Mut. Ins. Co.,* 389 Mass. 85, 101 (1983). We are unable to say that the findings of the judge on this issue were clearly erroneous.

Brown also argues that there was no evidence of actual loss which he equates with out of pocket expenses by LeClair. Since the judge dismissed LeClair's counterclaim for emotional distress, Brown argues that LeClair is only entitled to damages for his physical injuries.

"Actual damages" for injuries under G. L. c. 93A comprehend all foreseeable and consequential damages arising out of conduct which violates the statute, *DiMarzo* v. *American Mut. Ins. Co.,* 389 Mass. at 101, and we think, include, after St. 1979, c. 406, § 1, "emotional distress, occurring contemporaneously with . . . personal injuries." See *Payton* v. *Abbott Labs,* 386 Mass. 540, 548 (1982). See also *Crowell* v. *McCaffrey,* 377 Mass. 443, 451 (1979); *Simon* v. *Solomon,* 385 Mass. 91, 111-113 (1982). Compare *Wolfberg* v. *Hunter,* 385 Mass. at 396-397 & n.8.

4. *Treble Damages.* Under G. L. c. 93A, § 9(3), inserted by St. 1969, c. 690, a successful plaintiff may be awarded "up to three but not less than two times [the actual damages] if the court finds that the use or employment of the act or practice was a "wilful or knowing" violation . . . or that the refusal to grant relief upon demand was made in bad faith." The trial judge found both a "wilful and [*sic*] knowing" violation and a bad faith refusal.·

On October 23, 1981, LeClair sent Brown a "demand letter" seeking damages and requesting relief (repairs) under c. 93A for problems relating to leaks, the January 31, 1980, flood, cockroaches, the assault, and breach of the covenant of quiet enjoyment. Brown's agent responded by denying

any unfair practice, claiming that the problems had been corrected and refusing to make repairs as they had been "made long ago." An offer of $150 to settle the matter was made.

In finding that Brown did not make a good faith offer of settlement, the judge laid stress on the refusal to repair. The record shows that Brown neither made any repairs in response to the demand letter nor investigated the merits of LeClair's complaints. Indeed, the judge found that "no further repairs were made until the landlord received notice of violations of law from the Housing Inspection Department of the City of Boston." We see no error in the judge's conclusion that Brown's response to LeClair's c. 93A demand letter was in bad faith. *DiMarzo* v. *American Mut. Ins. Co.,* 389 Mass. 85, 102 (1983).

The judge's award based on a wilful or knowing violation is supported by evidence that the previous tenant, who moved out in 1979, was unsuccessful in obtaining repairs and that some of the problems (leaks) had persisted for three and a half years and continued to the time of the trial in 1983. While each violation may not in itself have been wilful, e.g., the inadequate door, we think that where, as here, there were many continuing violations, some major and some minor, their cumulative effect on habitability can be considered by the trial judge in determining whether Brown's behavior was wilful. Cf. *McKenna* v. *Begin,* 5 Mass. App. Ct. at 308. Even if each violation must, for purposes of c. 93A, be considered separately, we think the judge's additional finding of bad faith in responding to LeClair's demand letter — the alternate prong permitting an assessment of punitive damages — leaves no doubt of the judge's finding sufficient ground to award treble damages.

Brown challenges the award of multiple damages on the ground that the findings do not sufficiently explain why treble rather than double damages were awarded. Although "neither c. 93A nor our cases construing that statute provide a trial judge with clear guidance in deciding how damages should be multiplied," *Rita* v. *Carella,* 394 Mass. 822, 829 (1985), the decision is to be "[b]ased on the egregiousness of [the] defendant's conduct." *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 853 (1983). On the evidence before us, we cannot say that the determination to award treble damages was error.

*Judgment affirmed.*

*Martin Jacobs* for the plaintiff.
*William H. Lee* (*Fredda Hollander* with him) for the defendant.