WILLIAM YOUNG *vs.* PHYLLIS PATUKONIS. May 1, 1987. *Administrative Law,* Regulations. *Landlord and Tenant,* Security deposit, Habitability, Rent. *Rent Control,* Rent overcharge. *Consumer Protection Act,* Landlord and tenant.

This is the third of a series of summary process actions brought in the Housing Court by the landlord, Young. Judgment of possession was entered eventually for the tenant, Patukonis, on November 15, 1984. The tenant, however, appeals from the judgment, claiming that the trial judge improperly dismissed two of her six counterclaims and awarded inadequate damages on those claims upon which she ultimately prevailed.[1]

The judge made the following findings. Young, jointly with his mother, purchased the three-unit apartment building on May 4, 1982. Soon after acquisition, Young moved into the second floor apartment. His mother has never lived in the building. Patukonis has lived in the first floor apartment, as a tenant at will, since May, 1980. On January 1, 1983, Young increased Patukonis's rent from $220 to $250 per month. On Janaury 19, 1984, title to the building was transferred to Young solely.

---

[1] The tenant has not appealed from the dismissal of her counterclaim which alleged that the premises were negligently maintained.

There was an oral agreement between the tenant and the former landlord that the tenant would be responsible for purchasing the fuel oil needed to heat the apartment. That oral arrangement continued with Young. Contrary to Young's assertions, Patukonis had paid a $50 security deposit to the prior owner which, in turn, was given to Young, who failed to comply with any of the requirements of the security deposit statute. See G. L. c. 186, § 15B. A check for $50, dated May 23, 1984, was given to the tenant by Young in May, 1984.

Several violations of the State Sanitary Code, 105 Code Mass. Regs. § 410.000 (1983), have existed in the tenant's apartment since Young and his mother acquired the property.[2] The judge concluded, however, that most of the conditions had minimal impact on the use and enjoyment of the apartment and that Young had been fairly responsive to the tenant's requests for repairs.

The apartment was subject to rent control under c. 15 of the Ordinances of the City of Boston (1975) (Ordinance). When Young purchased the property he was unaware that it was subject to rent control. That mistaken belief was based upon his residency on the premises and the representations of the seller and Young's attorney. The judge concluded that a rent over-charge of $30 a month occurred from January 1, 1983, until January 19, 1984, the date the mother's interest was transferred to Young and the unit automatically became qualified for an owner-occupant exemption. See c. 15, § 1(e) (ii) of the Ordinance.

A. *Failure to Provide Utilities*.

Patukonis challenges the judge's finding that under the terms of an oral contract the tenant assumed the burden of providing heat and hot water and his corresponding ruling that such oral agreements are enforceable as matter of law. The tenant maintains that under the State Sanitary Code the landlord is not excused from his obligation to provide heat and hot water unless there is a writing transferring the obligation to the tenant. The State Sanitary Code, 105 Code Mass. Regs. §§ 410.190 and 410.201 (1983), provides that the owner of a dwelling "shall" supply heat and hot water "except and to the extent that the occupant is required to supply the fuel under a written letting agreement."

The interpretation of a regulation is subject to the traditional rules of statutory construction. *Amherst Nursing Home, Inc.* v. *Commonwealth,* 16 Mass. App. Ct. 638, 640-641 (1983). When the language of a regulation is "plain it must be given its ordinary meaning, and the language used constitutes the principal source of insight into the regulatory purpose." *Morin* v. *Commissioner of Pub. Welfare,* 16 Mass. App. Ct. 20, 24 (1983). The plain and unambiguous language of the regulation indicates that a writing

---

[2] The violations include the existence of lead paint, cracked windows, missing window screens, stained ceiling, loose bathroom tiles, mice, ants, missing balustrades on the porches, inadequate trash receptables, and inadequate door locks.

is required when the obligation to provide heat and hot water is transferred to the tenant. See *Mellor* v. *Berman*, 390 Mass. 275, 280 (1983). The primary purpose of the sanitary code is to protect the public and prevent violations rather than to punish past violations as criminal offenses. See *Commonwealth* v. *Hadley*, 351 Mass. 439, 442 (1966), vacated and remanded on different grounds, 388 U.S. 464 (1967); *Commonwealth* v. *Haddad*, 364 Mass. 795, 799 (1974). Our interpretation is consistent with that preventative purpose.

B. *Security Deposit Law — G. L. c. 186, § 15B(3) (a).*

In finding that Young violated the requirements of the security deposit statute, the judge limited the tenant's damage award to interest of $5.21. He refused to grant treble damages under § 15B (7) of the statute because the tenant was still in possession and the deposit had been returned. Patukonis argues that she is entitled to treble damages, interest and attorney's fees for the breach of § 15B (3) (a), & 6 (a). The question has been answered in Patukonis's favor by the recent case of *Castenholz* v. *Caira*, 21 Mass. App. Ct. 758 (1986).

The *Castenholz* case held that subsection (7) penalties are appropriate even when the tenant remains in possession where a landlord fails to establish a separate account as required by subsection 3 (*a*) and refuses to return the deposit on demand, thus forcing the tenant to litigate. *Castenholz*, 21 Mass. App. Ct. at 764. Patukonis maintains that because of the violation of the security deposit law she was forced to litigate in order to vindicate her rights. Since Young failed to place the security deposit in a separate account within thirty days after receiving it, he was obliged to return the deposit on demand. See § 15B (3) (a) & 6 (a). Patukonis made the demand for the return of her security deposit in her counterclaim (December, 1983) to the first of the three summary process actions. See *Castenholz*, 21 Mass. App. Ct. at 764. Young did not acknowledge his error nor did he promptly tender the deposit; five months passed before the deposit was returned. During that five-month period, the tenant, in her counterclaim to the second summary process action, again made demand for the return of her security deposit. We thus agree with the tenant that subsection (7) is applicable to these circumstances and, accordingly, that Young is liable for treble damages, interest, costs, and attorney's fees.

C. *Boston Rent Control Ordinance Violation.*

For about thirteen months, from January 1, 1983, through January 19, 1984, the tenant was overcharged $30 a month in violation of the Ordinance, c. 15, § 9.[3] Noting the one-year limitation of action provision in subsection

___

[3] Section 9 states, in pertinent part:

"Section 9. *Civil Remedies.* (a) Any person who demands, accepts, receives, or retains any payment of rent in excess of the maximum lawful rent, in violation of the provisions of this ordinance . . . shall be liable . . . for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of one hundred dollars, or not more than three times the amount by which the

(c) of § 9, the judge awarded damages for five months. The tenant claims that (1) damages should have been awarded for seven months, (2) the finding of nonwilfulness was not supported by the evidence, and (3) she should have been awarded attorney's fees.

The instant complaint was filed on July 9, 1984, and the tenant filed her counterclaim on July 16, 1984. Damages should have been calculated with respect to charges that occurred during the one-year period prior to the date of the filing of the complaint. That period would thus cover rent overcharges which occurred after July 9, 1983. See *Rita* v. *Carella*, 394 Mass. 822, 824 (1985); G. L. c. 260, § 36. As rent was due at the beginning of each month, there appears to be an overcharge for January 1, 1984, since the property was not exempt for nineteen days. The tenant is not entitled to the overcharge incurred on July 1, 1983, since it is more than a year from the date of the action. Thus, damages are to be awarded for six months.

The judge's finding that Young's violation was not wilful is not clearly erroneous, as Young could easily have had the property decontrolled much earlier. The tenant is, however, entitled to attorney's fees and costs under the ordinance, as § 9 expressly provides for liability for reasonable attorney's fees and costs for any person who "receives, or retains any payment of rent, in excess of the maximum lawful rent." A showing that a violation is neither wilful nor the result of failure to take practicable precautions merely limits the amount of liquidated damages to the amount of the overcharge.

D. *Breach of Warranty of Habitability.*

Patukonis challenges the judge's award of $625 in damages for the breach of warranty of habitability, maintaining that the judge failed both to use the percentage reduction approach in calculating damages and to make specific findings regarding the extent of each violation. See *McKenna* v. *Begin*, 5 Mass. App. Ct. 304 (1977). Although a detailed explanation of the trial judge's calculations would have been preferable, an approximate dollar amount is permissible; damages in rent abatement cases generally are not capable of precise measurement. See *McKenna* v. *Begin*, 5 Mass. App. Ct. at 311; *Brown* v. *LeClair*, 20 Mass. App. Ct. 976, 978 (1985). The judge properly could have disregarded the minor code violations. *McKenna*, 5 Mass. App. Ct. at 308. There is record support for the amount awarded. See *Brown* v. *LeClair*, 20 Mass. App. Ct. at 977-978.

E. *General Laws c. 93A.*

Young, as an owner-occupant of a three-family building, whose primary objective is personal, is not subject to G. L. c. 93A. That claim was properly dismissed. See *Billings* v. *Wilson*, 397 Mass. 614 (1986).

---

payment or payments demanded, accepted, received, or retained exceed the maximum rent which could be lawfully demanded, accepted, received or retained, whichever is the greater; provided that if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, the amount of such liquidated damages shall be the amount of the overcharge or overcharges."

The case is remanded to the Housing Court for further proceedings consistent with this opinion.

*So ordered.*

*Lori Weiner Lander,* for the defendant, submitted a brief.