Doerfer, J.
INTRODUCTION
The present action arises out of personal injuries sustained by Priscilla K. Davis when she slipped and fell on the stairs of the Barnstable branch of the Bank of Boston on February 8, 1990. This matter is before the court on the plaintiffs’ motion for partial summary judgment against defendant First National Bank of Boston. For the reasons discussed below, the plaintiffs motion for partial summary judgment is ALLOWED.
PROCEDURAL HISTORY
On February 8, 1990, while entering the rear entrance of the Barnstable branch of the Bank of Boston (the Bank), Priscilla Davis tripped and fell, breaking her hip. On October 9, 1992, Mrs. Davis and her husband Lee Davis filed an action against the Bank alleging that it had negligently failed to maintain the stairway at the rear entrance of the Barnstable branch. Shortly prior to trial in January of 1995, the plaintiffs discovered a blueprint plan dated December 12, 1988 indicating that a handicap access ramp was to be built at the rear entrance of the Bank. This blueprint plan had been prepared under the supervision of Wayne Bredvik (Bredvik), the manager of the Bank’s architecture and construction department from 1981 to 1989. Accordingly, on May 11, 1995, the Davises moved to amend their complaint to add a claim that the Bank violated G.L.c. 22, §13A and G.L. chapter 93Aby failing to provide a handicap accessible entrance. On May 16, the court denied the motion to amend with respect to the Chapter 93A claim but otherwise allowed it. Following a jury trial, judgment entered for Priscilla Davis in the amount of $200,000 plus interest and for Lee Davis in the amount of $60,000 plus interest.
The Davises commenced the present negligence action against Bredvik on May 26, 1995. On July 6, 1995, they were allowed to amend their complaint to allege that Bredvik violated Chapter 93A, Section 9 by failing to ensure the existence of a handicap access ramp as required by G.L.c. 22, §13A. Thereafter, on June 18, 1996, the Davises again moved to amend their complaint to add as defendants the Bank and John Carroll, the Bank’s designated liaison with plaintiffs’ counsel in the Barnstable suit. This Court (Volterra, J.) initially denied the motion but upon reconsideration, granted the motion and allowed the desired amendment.
The third amended complaint alleges that the Bank violated Chapter 93A by failing to comply with G.L.c. 22, § 13A and by withholding documents and information in the prior action. The plaintiffs now move for partial summary judgment seeking an order that as a matter of law, the absence of a handicap accessible entrance at the Bank’s Barnstable branch violated the provisions of G.L.c. 22, §13A.
BACKGROUND
The undisputed facts as contained in the summary judgment record are as follows. On February 8, 1990, Priscilla Davis fell and fractured her hip as she attempted to enter the Barnstable branch of the Bank of Boston through the rear entrance. The rear entrance consisted of a cement walkway leading up to a single step with a one inch overhang, which adjoined a brick entry platform to the double glass entrance doors.
On the day of Mrs. Davis’ accident, the Barnstable branch lacked a handicap accessible entrance. Prior to the accident, Mrs. Davis was an independent person who could get around on her own; she did not use a walker or a cane and the motor vehicle she drove did not have handicapped plates. However, she was 69 years old and she shuffled her feet when she walked. Immediately following the accident, Mrs. Davis told the branch manager, Carlene Barnes, that she was clumsy and had tripped over her own feet.
The Barnstable branch was located in a two-story house that had been converted to commercial use. The Bank was the sole occupant of both the first floor, which contained 1797.5 square feet of space, and the second floor, which contained 974 square feet of space. At all times relevant to this action, approximately 45.8% of the total area of the Barnstable branch, or 1269.5 square feet, was open to the public. As of the date of Mrs. Davis’ accident, the second floor of the building was neither occupied nor open to the public, although it contained the only restrooms in the building.
In late 1987 or early 1988, the consulting firm of Landor & Associates created a new corporate image for Bank of Boston (the Bank), known as the “Landor Look,” which stipulated the colors of the carpet, paint and plastic laminate for all branches of the Bank. Between 1988 and 1989, the Landor Look was implemented at all 120 Massachusetts branches of the Bank, including both floors of the Barnstable branch.
On December 20, 1988, the Bank entered into a contract with Sherim Painting Co. (Sherim) for the implementation of the Landor Look on the first floor of the Barnstable branch for the sum of $35,000. The Sherim work proposal describes the work to be done on the first floor as “Interior renovations” to include *375 sanding, priming, and preparing woodwork, doors and baseboards; painting; relaminating counter tops; and installing new windows. Bredvik, the Bank’s supervising architect, oversaw the work on the first floor, which was undertaken after banking hours and was completed on March 15, 1989.
The Bank contracted separately with Sherim to implement the Landor Look on the second floor of the Barnstable branch for the sum of $16,000. A Bank work request dated June 13, 1989, describes the second floor project as “Refinish 2nd Floor to new Corporate Image, including removal of walls to enlarge reception area.” The work on the second floor was completed by March 30, 1989.
The work performed in implementing the Landor Look at the Barnstable branch consisted of painting, installation of carpet and ceramic tile, construction of built-in cabinets, replacement of plastic laminate on existing surfaces, cabinetry work, cleaning of drapes, purchase and installation of Levelor blinds, modification of security wiring, movement of electrical cable, manufacture and installation of an interior information sign, and wiring and installation of three light boxes. None of this work required a building permit under the State Building Code.
According to a ledger sheet listing the total amount of work done in the fiscal year ending 7 /31 /89 for the Barnstable branch, the Bank spent $43,747.01 on the first floor and $19,362.80 on the second floor. Of the $63,000 the Bank spent on the “Landor Look,” $56,000 was for interior decoration work. The parties have stipulated that the one hundred percent equalized assessed value of the Barnstable branch building for the period 1989-1990 was $441,300.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving parly to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing parly’s case or by demonstrating that the opposing parly has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
The plaintiffs now move for partial summary judgment against the Bank seeking a ruling that as a matter of law, the Bank’s failure to provide a handicap accessible entrance to the Barnstable branch prior to Mrs. Davis’ accident in February of 1990 violated the provisions of G.L.c. 22, §13A. Chapter 22 Section 13A establishes the Architectural Access Board (AAB) which “shall make and from time to time alter, amend, and repeal, in accordance with the provisions of chapter thirty A, rules and regulations designed to make public buildings accessible to, functional for, and safe for use by physically handicapped persons.” G.L.c. 22, §13A (1996).
With respect to buildings under the jurisdiction of the AAB, the regulations in effect at the time of the Landor Look project[2] provided:
The following formula shall apply and govern all construction (except construction of curb cuts under Section 21 of these Regulations), reconstruction and changes of use as defined in these Regulations:
A. If the work being performed amounts to less than twenty-five percent (25%) of the one-hundred percent (100%) equalized assessed value of the building, and
1. the cost of the work is less than $50,000, only that portion of the work being performed shall comply with these Regulations;
2. the cost of the work is $50,000 or more, then that portion of the work being performed shall comply with these Regulations, and an accessible entrance and toilet usable by a person in a wheelchair also shall be provided.
B. If the work being performed amounts to more than twenty-five percent (25%) of the one-hundred percent (100%) equalized assessed value of the building, the entire facility shall comply with these Regulations. 521 Code Mass. Regs. §3.3 (1987).
The regulations further provided that:
The formula contained in Regulation 3.3 shall also apply to all remodeling and alteration as defined in these Regulations, provided that the work being performed amounts to more than five percent (5%) of the one-hundred percent (100%) equalized value of the building, or a building permit is needed, or work is determined to be an alteration by a state or local building inspector. 521 Code Mass. Regs. §3.4 (1987).
Finally, the regulations provided that “when the work performed on a building is divided into separate phases or projects or under separate building permits, the total cost of such work in any twenty-four (24) month period shall be added together in applying the formula in this Regulation.” 521 Code Mass. Regs. §3.5 (1987). The plaintiffs contend that pursuant to these regulations, the Bank was required to provide a handicap accessible entrance to the Barnstable branch in connection with the Landor Look project.
The Bank contends that the affidavit of its expert, Norton Remmer, raises genuine issues of material fact *376 concerning the proper application of AAB Regulations 3.3 and 3.4 which cannot be resolved on summary judgment. Remmer, a consulting engineering expert, opines that the implementation of the Landor Look at the Bank’s Barnstable branch constituted ordinary repairs under the state building code, 780 Code Mass. Regs. §2200, which did not require a building permit. Remmer then states that the experience and practice in the engineering profession is that the AAB regulations apply only when a building permit is required for the work performed. Remmer further opines that in applying Regulations 3.3 and 3.4, work carried out in restricted nonpublic areas of a building is not included in calculating the total cost of the work being performed.
The interpretation of administrative regulations is a question of law for the court. Toubiana v. Priestly, 402 Mass. 84, 90 (1988); Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, 421 Mass. 196, 209 (1995). Neither engineers’ common understanding about the application of the AAB regulations nor Remmer’s “expert” opinion concerning the proper application of those regulations is relevant to this Court’s legal analysis. See Perry v. Medeiros, 369 Mass. 836, 842 (1976) (concluding that in a negligence case, the testimony of the building inspector interpreting the building code and opining that it had been violated was properly excluded). Compare Sullivan v. First Massachusetts Financial Corp., 409 Mass. 783, 793 (1991) (in certain complex cases, expert testimony may be admissible to establish the law of another jurisdiction). Accordingly, the present matter is appropriate for partial summary judgment.
The Bank contends that the provisions of 521 Code Mass. Regs. §3.4 apply only when the work at issue requires a building permit and can be administered by a building official. The Bank notes that the enabling act creating the AAB, G.L.c. 22, §13A, provides that:
There shall be no construction, reconstruction, alteration or remodeling of a public building except in conformity with said rules and regulations, nor shall the use of any building be changed to a use in which the building is open to and used by the public as defined in this section until such building so conforms, and specifications have been approved as provided in this section and in §3W of Chapter 143, showing compliance with said rules and regulations . . . G.L.c. 22, §13A (1996).
Chapter 143, Section 3W charges local inspectors with the responsibility of reviewing construction plans and specifications before issuing building permits. See G.L.c. 143, §3W (1995). The Bank also notes that under the State Building Code, applications for a building permit are required to be accompanied by three copies of plans and specifications. See 780 Code Mass. Regs. §113.1. The enabling act for the AAB further provides that:
The provisions of this section and all rules and regulations made hereunder shall be enforced by the inspector of buildings, building commissioner, local inspector and inspector, as defined in chapter one hundred and forty-three, as to buildings under their respective jurisdictions. G.L.c. 22, §13A (1996).
The Bank thus emphasizes that Chapter 22, Section 13A links the application and enforcement of AAB regulations to the building permitting process. Accordingly, the Bank argues, where work performed qualifies as ordinary repairs under the State Building Code for which no permit is needed, compliance with AAB regulations such as 521 Code Mass. Regs. §§3.3 and 3.4 is not required.
Although the Bank is correct that application for a building permit triggers a review process to ensure compliance with AAB regulations, it does not follow that only work requiring a permit under the State Building Code must comply with said regulations. Chapter 22, Section 13A provides:
The board shall have the power of local and state inspectors in the enforcement of its rules and regulations, including but not limited to, the right to enter all public buildings as defined by this section. The board shall use all reasonable methods to cause the dissemination of the provisions of this section and all rules and regulations made hereunder to architects, engineers, contractors, state and local building inspectors, local building commissioners, state and local public works officials, the chief executive of each city and town, handicapped persons, and any other person requesting such information.
The board shall take such other actions as may be necessary and appropriate to encourage and [assist] all state and local building inspectors to enforce the provisions of this section, all rules and regulations made hereunder and decisions of the board, including but not limited to, providing training and technical assistance to said inspectors. The board shall also provide technical assistance and training to professional groups, public officials and state agencies. G.L.c. 22, §13A (1996).
Section 13A further provides:
the board shall receive complaints of noncompliance with this section or any rule or regulation promulgated hereunder from any person or may receive complaints initiated by its own staff. If the board finds, after notice and opportunity for a hearing, that any person is not in compliance with this section or with any rule or regulation promulgated hereunder, it may issue an order to compel such compliance. G.L.c. 22, §13A (1996).
That architects, engineers and contractors are to be familiar with the regulations suggests that they apply to projects which may not involve local permitting authorities. Moreover, the Board is authorized to enforce the regulations outside of the permit process, upon the complaint of a handicapped person, for example, suggesting that permitting authorities will not necessarily *377 be involved in all cases where the regulations apply. Thus, while application and enforcement of AAB regulations will frequently be intertwined with the permitting process under the State Building Code, G.L.c. 22, §13A does not restrict the applicability of those regulations to only those projects involving a building permit.
Moreover, the Bank’s position that compliance with AAB regulations is required only where the work performed requires a permit under the State Building Code conflicts with the plain language of 521 Code Mass. Regs. §3.4 which stated that the formula set forth in §3.3 applies when:
the work being performed amounts to more than five percent (5%) of the one-hundred percent (100%) equalized value of the building, or a building permit is needed, or work is determined to be an alteration by a state or local building inspector. 521 Code Mass. Regs. §3.4 (1987) (emphasis added).
It is well established that the word “or” is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise. Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, supra at 212. Thus, while issuance of a building permit is one of several conditions triggering the application of §3.3, it is not a prerequisite to application of that formula in every case.
The plaintiffs contend that the implementation of the Landor Look project at the Barnstable branch was remodeling within the meaning of the AAB regulations. Remodeling is defined as “modification beyond an interior decoration or involving any structural change, or the redecorating of a public building for which the cost of such refurbishing, updating or redecorating equals or exceeds five percent (5%) of the full and fair cash value of the building.” 521 Code Mass. Regs. §5.18 (1987).
The plaintiffs contend that the Landor Look project, which involved painting, carpeting, tiling, construction of bookshelves, and installation of levelor blinds, constituted the redecorating of a public building and thus, “remodeling,” under 521 Code Mass. Regs. §5.18. The term “redecorating,” which encompasses the concepts of refurbishing, updating and redecorating, is not otherwise defined in either G.L.c. 22, §13A or the AAB regulations. The Bank contends that because the term “remodeling” is grouped in both the statute and regulation with the terms “construction,” “reconstruction” and “alteration,” all of which would require a building permit, then “redecorating” must similarly refer to work requiring a building permit. This argument lacks merit, since the definition of “remodeling" clearly distinguishes between work presumably requiring a building permit— modifications beyond interior decoration and structural changes — and redecorating.
The Bank further notes that the present version of Regulation 3.3 provides:
All additions to, reconstruction, remodeling, and alterations or repairs of existing public buildings or facilities, which require a building permit or which are so defined by a state and local inspector, shall be governed by all applicable subsections in 521 CMR 3. (emphasis in original). 521 Code Mass. Regs. §3.3 (1996).
The Bank argues that the present formulation of the this regulation demonstrates that Regulations 3.3 and 3.4 as they existed at the time of the Landor Look project applied only when the work performed required a building permit. The general rule is that verbal changes in the revision of a statute do not alter its meaning and are construed as a continuation of preexisting law in the absence of some accompanying report of revisers or other indication showing an express purpose to change the substance of the law. State Ethics Commission v. Doe, 417 Mass. 522, 530 (1994). However, changes in the wording in a revision may be so violent as to take them out of the general rule. Id. An examination of the present version of Regulation 3.3.1-3.3.6 reveals numerous changes substantially narrowing the focus of the AAB’s jurisdiction. Thus, this Court does not view such changes as merely a clarification of what the AAB intended through its earlier language in the 1987 version of Regulation 3.3 and rejects the Bank’s argument to that effect.
The court accords the words of a regulation their usual and ordinary meaning. Warcewicz v. Department of Environmental Protection, 410 Mass. 548, 550 (1991); Young v. Patukonis, 24 Mass.App.Ct. 907, 908 (1987). The word “decorate” means to deck with something becoming or ornamental, to adorn, beautify or embellish; to plan and furnish a color scheme; or to paint or wallpaper. Webster’s New Universal Unabridged Dictionary (2d ed. 1983). This Court thus concludes that the implementation of the Landor Look at the Bank’s Barnstable branch constituted redecorating under 521 Code Mass. Regs. §5.18.
Said redecorating constitutes “remodeling” under 521 Code Mass. Regs. §5.18 if the cost equals or exceeds five percent of the full and fair cash value of the building. “Full and fair cash value” is defined as:
the assessed valuation of the building as recorded in the Assessor’s Office of the municipality as equalized at one-hundred percent (100%) valuation; if no assessed value exists, either the fair market value, or for buildings constructed by the Commonwealth or any political subdivision thereof, the replacement cost of the building. 521 Code Mass. Regs. §5.10 (1987).
It is undisputed that the one hundred percent equalized assessed value of the Barnstable branch building for the period 1989-90 was $441,300, five percent of which equals $22,065. Thus, the Landor Look project constituted “remodeling” within the meaning of the AAB regulations if the cost of the project equalled or exceeded $22,065.
*378 The Sherim contract for the interior renovations on the first floor of the Barnstable branch cost the Bank $35,000, and the contract for the second floor cost $16,000. Further, Fox testified that of the $63,000 the Bank spent to implement the “Landor Look” in the Barnstable branch during the fiscal year ending in the July of 1989, $56,000 was for interior decoration work. The work performed in connection with tire Landor Look project therefore constituted remodeling under 521 Code Mass. Regs. §5.10.
Thus, pursuant to 521 Code Mass. Regs. §3.4, the formula contained in Regulation 3.3 applies, because the work at issue cost more than 5% of the equalized value of the building. Under Regulation 3.3, the Bank was required to provide a handicap accessible entrance if the cost of the work on the Barnstable branch was $50,000 or more. See 521 Code Mass. Regs. §3.3A{2) (1987). The Bank argues that for purposes of calculating the total cost of the work, any work performed in portions of the building to which the public does not have access should be excluded. The Bank notes that the AAB regulations define “building” as:
A structure enclosed within exterior walls or fire walls, built out of a combination of any materials, whether portable or fixed, to form a structure for the shelter of persons, animals or property. The word “building” shall be construed where the context requires as though followed by the words “or part or parts thereof.” 521 Code Mass. Regs. §5.6 (1987).
In addition, the Bank emphasizes that Regulation 6, concerning shopping centers, provides:
Public areas of shopping centers shall include, but shall not be limited to, areas where the service or product of the establishment is offered to the public, public toilet rooms provided for clientele in said areas, walks, stairs, elevators, primary entrances, and parking facilities. 521 Code Mass. Regs. §6.1 (1987).
Regulation 8.4, concerning apartment buildings; Regulations 9.1 and 10.1, concerning condominiums; and Regulation 17, concerning restaurants similarly distinguish between public and nonpublic areas. The Bank argues that the same distinction exists between public and nonpublic areas of commercial buildings such as the Barnstable branch. Accordingly, the Bank contends that the cost of work done on the second floor of the Barnstable branch, which was not open to the public, and restricted areas such as that behind the tellers’ windows on the first floor, should be excluded from the calculation of total cost. Multiplying the percentage of the building open to the public, 45.8%, by the $51,000 spent to redecorate the Barnstable branch results in a total cost of $23,358, which would not trigger the accessible entrance requirement of 521 Code Mass. Regs. §3.3A(2).
The Bank’s argument overlooks the fact that Regulation 5.16, which describes those buildings to which the AAB requirements apply, provides that such buildings include, in relevant part:
-transportation terminals
-institutional buildings
-commercial buildings
-public areas of apartment buildings and condominiums containing twelve (12) or more units
-public areas of funeral homes
-public rest rooms and public areas of shopping centers
and restaurants.
521 Code Mass. Regs. §5.16.2 (1987). Thus, the regulations make no distinction between public and nonpublic areas with respect to commercial buildings such as the Barnstable branch, in contrast to the provisions concerning apartments, condominiums and restaurants cited by the Bank. See also 521 Code. Mass. Regs. §11.1 (1989) (relating to commercial buildings). Further, it should be noted that the AAB regulations specifically provide:
When a building is occupied by two (2) or more different uses, the Regulations applicable to each use shall apply to such parts of the building within that use; and if there are conflicting provisions, the Regulations securing greater accessibility shall apply. 521 Code Mass. Regs. §3.6 (1987).
The regulations do not, however, provide that accessibility requirements may be applied only to the public parts of a building occupied by a single use. Thus, this Court declines to adopt the Bank’s position that only work performed in those portions of the Barnstable branch open to the public should be counted for purposes of calculating the project’s total cost.[3]
Given the undisputed figure of $56,000 spent on interior decoration work, the Bank was required to provide a handicap accessible entrance in connection with the Landor Look project. Thus, the plaintiffs are entitled to judgment as a matter of law on the issue of whether the Bank’s failure to do so violated G.L.c. 22, §13A. In so holding, this Court makes no determination regarding the issue of whether Mrs. Davis was in fact a “physically handicapped person" within the meaning of 521 Code Mass. Regs. §5.14 or whether her injuries were proximately caused by the Bank’s violation of Chapter 22, Section 13A.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for partial summary judgment be ALLOWED.

This version of the AAB regulations was effective from July 10, 1987 through February of 1990.

It should be noted that although the second floor of the Barnstable branch still was not occupied and open to public by the time of Mrs. Davis’ accident, part of the work performed in connection with the Landor Look project was the removal of walls on the second floor to enlarge a reception area. In addition, the only restrooms in the building were located on the second floor.