Ostrach, J.
Plaintiff Pocasset Mobile Home Park, LLC (“Pocasset”) brought this summary process action to evict defendant Cynthia Carvalho (“Carvalho”) and to recover $6,840.00 in unpaid lot fees.[1] Carvalho counterclaimed, inter alia, for damages from Pocasset’s alleged failure to maintain a working septic system. After a jury-waived trial, the judge awarded possession to Carvalho and $5,130.00 in damages to Pocasset. The reduction in damages for the unpaid lot fees reflected a diminution in value of the rented property caused by the “compromised” septic system.[2] Pocasset filed this appeal.
The judge found that for several years leading up to the time of trial, Pocasset’s septic system was not in compliance with Title V of the State Environmental code, 310 CMR §15.000 et seq., was “not functioning as it should and [was] subject to periodic failure. One of these failures occurred at Ms. Carvalho’s mobile unit.” Those findings are fully supported by evidence of repeated system failures and chronic overflows. Based on the system’s failures, the judge found that Pocasset had not provided a functioning septic system, that the correction of the system would have required Pocasset’s entire facility to halt operations, and that Pocasset had escaped that consequence only because of a separate Superior Court equitable proceeding.
Carvalho raised no defenses to Pocasset’s case-in-chief, asserting only counterclaims based on the persistent and significant failures of the septic system. Analysis of such common law claims proceeds in three steps: (1) when, if at all, did the landlord have actual or constructive knowledge of the condition causing the violations; (2) the “seriousness of the claimed defects and their effect on the dwelling’s habitability”; and (3) if this point is reached, what are the appropriate damages, that is, *78 the difference between the fair value of the unit as warranted and the fair value as it exists in its defective condition. See Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 200-201, 203 (1973). Pocasset challenges the trial judge’s determination at each of those steps.
Pocasset claims it received only one formal notice of a septic failure from Carvalho, which it promptly corrected. While it does not claim to have been unaware of the deplorable overall level of septic functioning on the property, it insists that a condition of recovery by Carvalho is that she, herself, complained about the specific impact of particular failures on her unit. That contention interprets the notice requirement too strictly, particularly for a large multi-unit facility. Carvalho did complain about the specific septic failure in her unit, she personally knew of other neighbors complaining to Pocasset about their units, and she knew about the administrative and judicial proceedings underway involving Pocassef s failing septic system.
The warranty of habitability is breached the moment the unit is not fit for habitation, not at the later time that the landlord learns of the defect. The purpose of notice is to minimize the time during which an uninhabitable unit is used for residential purposes. See Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 203 (1979). The law requires the landlord to get actual or constructive notice of a defect that affects the leased property so that it can undertake repairs. Boston Hous. Auth., supra at 203. Similarly, the statutory notice requirement in G.L.c. 239, §8A is that “the owner ... knew of such conditions” prior to rent withholding. Neither the statute, nor the common law, requires the tenant herself to deliver notice of the defect. As the trial judge noted, “there are eruptions of sewage, have been eruptions of sewage and the water is malodorous.” The judge’s conclusions that those facts and the other tenants’ complaints showed that Pocasset had, or should have had, knowledge of the impact of its failed septic system on tenants, and that the notice requirement was, thus, satisfied were not erroneous. See Boston Hous. Auth., supra at 201 n.17 (“Where one tenant gives the landlord notice of a defect which affects the habitability of other tenant’s apartments, the other tenants may rely on the first tenant’s notice.”).
Pocasset’s second argument is that because Carvalho’s individual unit experienced only one septic failure that was promptly corrected, she cannot assert that the septic problems were “significant” for purposes of this case. That argument fails both factually and analytically. As a matter of fact, the trial judge’s findings, supported by evidence in the record, indicate that Carvalho’s unit was directly affected by the systemic septic failures. In addition to the one incident of a “horrible septic smell” that Pocasset did repair after she had reported it, Carvalho experienced, for a year and a half, a constant “awful smell; like a septic kind of smell [in] the kitchen and bathroom” every time she turned the water on after it had not been recently used (i.e., overnight). Thus, in her own home, every morning when she brushed her teeth or made coffee, Carvalho smelled human filth. The trial court has “broad discretion” to determine whether a particular condition is a material breach of the warranty of habitability. Id., supra at 200 n.16. Given the trial judge’s findings, his conclusion that the septic system failure constituted a significant interference with the habitability of the property Carvalho rented from Pocasset is somewhat of an understatement.
Even if Carvalho had not shown that her particular parcel was adversely affected by the failed septic system, she would still have been entitled to relief. Pocasset’s *79 argument ignores the principle that a tenant leasing property acquires not only her specific unit, but also an interest in the common areas; and that the warranty of habitability is breached when any part of the premises, including common areas, is in material violation of the State Sanitary Code. It seems clear that the consequence of a landlord’s failure to provide a tenant with "habitable” premises should be the same regardless of whether the focus is on lack of habitability within a particular leased unit, or to a portion of the common area to which the tenant has access and the right of use. See King v. G & M Realty Corp., 373 Mass. 658, 661-662 and n. 6 (1977), citing Boston Hous. Autk, supra. There is no question in this case that the septic failures affected common areas, including the streets.
Further, given that Carvalho is a mobile home park tenant, she was directly affected by the septic failure in a way a more traditional tenant would not have been. Carvalho was both the owner of a mobile home and a tenant of Pocasset. She testified, without rebuttal, that the broad failures of the common septic system have substantially affected her ability to sell her unit.[3] This may be analyzed as a direct impact on her own unit, or as an impact on the common area that indirectly affects her interest as a tenant. In either case, the trial court was correct in determining that Pocassetis breach of the warranty of habitability caused compensable injury to Carvalho.
That brings the analysis to the third and final step, damages. The trial judge did not detail the formula he employed to calculate damages, but his course is easy to follow. Carvalho did not pay her lot fees for 19 months, leaving a sum due of $6,840.00. The judge awarded Pocasset $5,130.00. The difference of $1,710.00 amounts to $90.00 per month, or exactly twenty-five (25%) percent of the monthly lot fee of $360.00.[4]
The award was well within the broad discretion that must be left to the trier of fact, particularly in an area such as breach of habitability where quantification is nearly impossible. See Brown v. LeClair, 20 Mass. App. Ct. 976, 978 (1985) (noting that damages are not capable of precise measurement in these cases, and approving an “approximate result”). There can never be an ascertainable market for the value of property that is not legally rentable. The trial judge concluded that the daily stench of filth during morning ablutions and breakfast, coupled with recurrent and unpredictable catastrophic sewage overflows on or near Carvalho’s property, reduced the monthly rental value of her property by twenty-five (25%) percent. Pocasset has failed to satisfy its burden of proving an error in that determination.
Judgment affirmed.
So ordered.

 Like the trial judge, we will use “lot fees,” rather than rent, to describe Carvalho’s obligation to Pocasset.

 While Pocasset appealed the award of possession to Carvalho, it failed in its brief to address, or to request any relief relating to, that issue. That disregard of the issue undoubtedly resulted from the fact that possession of the premises is now moot. Carvalho vacated the premises in December, 2009, and her daughter left in June, 2010.

 Carvalho indicated that while the market value of her mobile home is $80,000.00, she has been unable to sell it for even $65,000.00.

 Judges are not required to use the percentage method for calculating damages for breach of the warranty of habitability. See Brown v. LeClair, 20 Mass. App. Ct. 976, 978 (1985).