Tucker, Richard T., J.
The plaintiff, Michael Dziok (“Dziok”), filed this action after defendant MetLife Auto & Home (“MetLife”) denied his claim of property damage to his vehicle.[1] MetLife denied the claim because it had suspended Dziok’s property damage coverage based on his failure to obtain a pre-insurance inspection of the car. Dziok asserts the following claims against MetLife: (1) breach of contract (Count I); (2) violation of 211 Code Mass. Regs. §94.07 (Count II); and (3) violation of G.L.c. 90, §340 (Count III). The action is now before the court on the parties’ cross motions for summary judgment. For the following reasons, Dziok’s motion is ALLOWED in part and DENIED in part and MetLife’s motion is DENIED.
BACKGROUND
I. Statutory and Regulatory Framework A. Pre-Insurance Inspections
General Laws c. 175, §113S(b)(2) provides that “[a] motor vehicle liability policy shall not provide . . . comprehensive coverage, so-called, or collision or limited collision coverage for a private passenger motor vehicle prior to an inspection of that motor vehicle by the insurer, unless ... the applicant for such coverage is an existing customer of the insurer . . .”[2] Section 113S(a) defines “existing customer” as “an applicant for a motor vehicle liability policy who has been insured for three years or longer without interruption under a motor vehicle liability policy or policies issued by the insurer to which the applicant’s application is submitted.”
Pursuant to this §340, the commissioner of insurance promulgated regulations regarding pre-insurance inspections of private passenger motor vehicles. See G.L.c. 175, §113S(c). Those regulations state that “[n]o Motor Vehicle Liability Policy for a Private Passenger Motor Vehicle including Physical Damage Coverage shall be issued or renewed in the Commonwealth unless the Insurer has inspected the motor vehicle in accordance with 211 CMR 94.00.” 211 Code Mass. Regs. §94.04(1). Like §113S, the regulations provide that no pre-insurance inspection is required if “the Applicant for Physical Damage Coverage is an Existing Customer.” 211 Code Mass. Regs. §94.05(l)(b).
Section 94.03 contains the following definitions: (1) “Physical Damage Coverage” means “the optional coverages in a Motor Vehicle Liability Policy for collision or limited collision and/or fire and theft or so-called comprehensive coverages”; (2) “Existing Customer” means “an Applicant for a Motor Vehicle Liability Policy who has been insured for three years or longer, without interruption, under a Motor Vehicle Liability Policy or Policies which include(s) Physical Damage Coverage, issued by the Insurer to which the Applicant’s application is submitted”; and (3) “Applicant” means “the named insured or individual applying as the named insured, as that term is defined in a Motor Vehicle Liability Policy.”
If a pre-insurance inspection is required, the insurer may defer it for ten days and notify the applicant about the inspection requirement, where he can obtain such inspection, and the consequence of a failure to obtain a timely inspection. See 211 Code Mass. Regs. §94.07. If such deferral occurs and the applicant does not obtain a timely inspection of his vehicle, the insurer shall suspend the physical damage coverage of the applicant’s policy until the inspection is completed. See 211 Code Mass. Regs. §94.09(1). The insurer must notify the applicant by mail of the suspension within five days of its effective date. See 211 Code Mass. Regs. §94.09(2).
*385 B. Demand Under G.L.c. 90, §340
General Laws c. 90, §340 addresses property damage vehicle liability insurance. It provides in part that a property damage claimant may submit a written demand to the insurer, and the insurer must respond within fifteen days with either an offer of settlement or an acceptance or rejection of the claim. The statute further states the following.
If such insurer’s decision is unacceptable to the claimant, and in the event the claimant prevails in a legal action wherein he recovers substantially the full amount of the claim, and if the court, after such recovery is determined, determines that the insurer failed to respond or that the insurer’s position as set forth in such response was unreasonable in light of the facts adduced at the trial, the amount of the claim in relation to any offer made in the response by such insurer or in relation to the amount of the damages determined at the trial, questions of liability and fact and any other pertinent matters, then the court may order that a penalty be included in the amount of the judgment not to exceed an amount equal to the determined damages plus costs and reasonable attorneys fees as determined by the court.
II. Factual Background
The summary judgment materials before the court reveal the following undisputed facts. In 2004-2005, Dziok lived in Barneveld, New York with his parents, who had a vehicle insurance policy with MetLife effective for that time period (“Policy 1”). Policy 1 listed Dziok as an insured Household Driver. Policy 1 continued to be in effect in policy period 2005-2006 and 2006-2007, with Dziok listed as an included driver and the vehicle he drove, a 2000 Oldsmobile Alero (“Alero”), listed under vehicle information.[3]
Dziok moved from New York to Manchester, Connecticut in late 2007, taking the Alero with him. He obtained a new vehicle insurance policy from MetLife at that time (“Policy 2”), which continued to be in effect in policy period, 2007-2008.
Sometime in early 2008, Dziok moved to West Brookfield, Massachusetts. On April 23,2008, he went to R.J. Foley, Inc. in Shrewsbury, Massachusetts, traded in the Alero, and purchased a 2005 BMW 330xi (“BMWj. Dziok contacted MetLife and changed his insured vehicle to the BMW. MetLife issued a new policy to Dziok listing his West Brookfield address and the BMW (“Policy 3”). Policy 3 had effective dates of April 28, 2008 to April 28, 2009.
In accordance with the Massachusetts regulatory law described above, MetLife notified Dziok by letter mailed on May 2, 2008 of the requirement to obtain a pre-insurance inspection of the BMW (“Inspection Letter”) . The Inspection Letter stated that the BMW “must be inspected by the date indicated above or your physical damage coverage will be suspended effective” May 15, 2008. Dziok received the Inspection Letter. When Dziok failed to obtain an inspection, MetLife notified him by letter mailed on May 27, 2008 that the BMW was no longer covered for collision, limited collision, and/or comprehensive as of May 15, 2008 (“Suspension Letter”). Dziok also received the Suspension Letter. Dziok stated in his interrogatory answers that he thought both the Inspection Letter and the Suspension Letter were mere form letters sent in error.
During a storm in West Brookfield on June 29, 2008, lightning struck a tree, which then fell onto the BMW and totaled it. Dziok submitted a claim to Met-Life for the damage, but MetLife denied it by letter dated July 1, 2008. The letter noted that “our investigation has revealed that you did not have the [pre-in-surance] inspection done on your vehicle within the required time frame. Your Collision and Comprehensive coverage was then suspended on” May 15, 2008.
By letter dated September 4, 2008, Dziok, through his attorney, made a demand upon MetLife pursuant to G.L.c. 90, §340 in the amount of $30,000.00. Dziok thereafter filed the current suit on November 14,2008.
DISCUSSION
I. Summary Judgment Standard
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See Kourouvacilis, 410 Mass. at 716. Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” See Pederson, 404 Mass. at 17. The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. See Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
II. Analysis
1. Breach of Contract (Count I)
In Count I, Dziok alleges that MetLife violated the comprehensive coverage section of Policy 3 by rejecting his claim of property damage to the BMW. The parties disagree over whether Dziok was obligated to obtain a pre-insurance inspection of the vehicle and *386 thus whether MetLife properly suspended the policy’s property damage coverage. The court concludes that Dziok was not obligated to obtain an inspection of the BMW, and MetLife therefore breached the relevant term of Policy 3 by not providing property damage coverage.
As described above, under the applicable statutory and regulatory framework, an applicant for physical damage coverage in a vehicle liability insurance policy who is an existing customer of the insurer need not obtain a pre-insurance inspection. See G.L.c. 175, §113S(b)(2); 211 Code Mass. Regs. §94.05(l)(b). The statute and regulations both define an existing customer as a motor vehicle insurance liability policy applicant who has been insured for three years or longer (without interruption) under a motor vehicle insurance liability policy or policies issued by the insurer to which the applicant submits his application. See G.L.c. 175, §113S(a)(2); 211 Code Mass. Regs. §94.03. Dziok clearly falls into this definition, as it is undisputed that he has been an insured under policies MetLife issued since at least 2005, three years before Dziok sought insurance coverage for the BMW and before the June 29, 2008 damage to the BMW — first under Policy 1 (issued in New York), then under Policy 2 (issued in Connecticut), and finally under Policy 3 (issued in Massachusetts).
MetLife argues that the regulation’s definition of “applicant” as “the named insured or individual applying as the named insured,” 211 Code Mass. Regs. §94.03, limits the scope of existing customers to only those persons who were insured for three years as the named insured or the individual that applied as the named insured. Because Dziok was not the named insured or the individual that applied as the named insured under Policy 1 (Dziok’s parents were), MetLife argues, he has not been insured for three years and cannot be an existing customer. MetLife incorrectly interprets the definition of “applicant.”
It is clear from the plain meaning of the regulatory language that “applicant” refers to the person currently seeking a vehicle insurance policy, who may be required to obtain a pre-insurance inspection under the regulations. See Young v. Patukonis, 24 Mass.App.Ct. 907, 908 (1987) (“When the language of a regulation is ‘plain it must be given its ordinary meaning, and the language used constitutes the principal source of insight into the regulatory purpose’ ” (citation omitted)).
This meaning is particularly clear when §94.00 is viewed as a whole, as the regulation uses “applicant” repeatedly to refer to the person currently applying for insurance. See, e.g., 211 Code Mass. Regs. §94.03 (defining “Nonowned Motor Vehicle” as “Private Passenger Motor Vehicle in the possession of the Applicant, or being operated by the Applicant”); 211 Code Mass. Regs. §94.05 (mandatory waiver of pre-insurance inspection if insured vehicle is new and unused, and physical damage coverage on such vehicle “shall not be suspended during the term of the Motor Vehicle Liability Policy due to the Applicant’s failure to provide the required documents”). “Applicant” therefore does not serve to limit an “existing customer” to one who was previously a named insured or one who applied • as a named insured.
MetLife also apparently argues that Policy 2 does not count toward the three-year continuous period because it was issued to Dziok in Connecticut for a different vehicle, the Alero, and had a different policy number than Dziok’s policy at the time of the BMWs damage, Policy 3. MetLife again interprets the definition of “existing customer” too narrowly. The regulatory language does not require that the existing customer have been an insured under the same policy. Rather, it specifically provides that an existing customer is an applicant “who has been insured for three years or longer, without interruption, under a Motor Vehicle Liability Policy or Policies.” 211 Code Mass. Regs. §94.03 (emphasis added).
Dziok was not required to obtain a pre-insurance inspection of the BMW, and MetLife therefore improperly suspended his physical damage coverage.[4] By doing so and failing to accept and pay for Dziok’s claim on that basis, MetLife — not Dziok — breached Policy 3. Dziok is entitled to summary judgment on Count I of his complaint.
2. Violation of 211 Code Mass. Regs. §94.07 (Count II)
The court has already concluded that MetLife should not have suspended the physical damage coverage under Policy 3, and Count II — which alleges a violation of the regulatory notification requirement regarding suspension — is therefore moot. The court will take no action on this claim.
3. Violation of G.L.c. 90, §340 (Count III)
As noted above, a court “may order that a penalty be included in the amount of the judgment not to exceed an amount equal to the determined damages plus costs and reasonable attorneys fees” if it determines that an insurer failed to respond to an insured’s demand pursuant to G.L.c. 90, §340 or that the insurer’s response (if any) was unreasonable “in light of . . . questions of liability and fact and any other pertinent matters.”[5] G.L.c. 90, §340.
Dziok submitted a demand to MetLife by letter dated September 4, 2008. The record, however, is unclear as to whether MetLife responded to this demand. Further, only MetLife addresses Count III in its summary judgment memorandum, and that is only to argue that because it properly suspended Dziok’s property damage coverage, there has been no violation of G..L.C. 90, §340. Neither party addresses the reasonableness of MetLife’s response to Dziok’s demand, if any. Accordingly, the court will hold another hearing to address Count III because the parties have not *387 adequately briefed that claim. Neither party is entitled to summary judgment on Count III at this time.
ORDER
Based on the foregoing, it is hereby ORDERED that Dziok’s motion for summary judgment be ALLOWED as to Count I and DENIED as to Count III, and that MetLife’s motion for summary judgment be DENIED as to Count I and Count III. The court takes no action on Count II because it is moot.

MetLife refers to itself as Metropolitan Auto & Home, but the court will use MetLife, as the court’s docket lists that as the defendant’s name.

Though not relevant to the issues before the court, an inspection pursuant to §113S involves recording the vehicle identification number, taking two color photographs of the vehicle, recording the vehicle’s relevant accessories, and recording the vehicle’s existing damage. See G.L.c. 175, §113S(c)(3).

The court notes that Policy 408838649 had effective dates for each policy period of only six months (e.g., for policy period 2005-2006, Policy 408838649’s technical effective dates were October 11, 2005 to April 11, 2006). The court assumes, based on the parties’ arguments, that Policy 408838649 covered each policy period in full despite what appear to be time gaps in the coverage.

MetLife makes the further nonsensical argument that even if Dziok qualified as an existing customer, he admitted he knew about the inspection requirement and wrongfully ignored it.

Section 340 enumerates other factors to consider, none of which apply here.