We take our facts from the judge’s memorandum, supplemented by undisputed evidence contained in the record. On April 4, 1994, the landlord purchased three apartment buildings. At that time, the defendants were tenants in one of the apartments, having moved there in 1992.
■ On April 8, the landlord sent a letter to all the tenants informing them that he had become the owner of the buildings and that his objective in *825 buying them was to fix them up, inside and out, that the improvements would be costly, and that they would take a year to complete. He stated that he would begin inside work on the vacant apartments and would take care of any serious inside problems any of the tenants had. In response the defendants sent a note, set forth in the margin,[2] listing the items they wanted repaired. The plumbing problems were addressed promptly but, the judge found, nothing else had been fixed.
On June 16, 1994, having determined that the work required to be done was so extensive that the building had to be vacated, the landlord wrote to the defendants, as well as to the other tenants, stating that because the buildings were “run down in the areas of plumbing, wiring, plaster, exterior siding, etc., etc.,” he intended “to gut each of the apartments, replace plumbing, wiring, plaster, insulate these mid-1800’s structures and make them look like they did in the mid-1800’s.” Although originally he had thought that he could rehabilitate the buildings without asking the tenants to vacate, he wrote that this was not possible, and he asked the defendants to leave within thirty days.
Soon thereafter, the defendants stopped paying rent, and on August 1, 1994, the Northbridge board of health (board) received a complaint from the defendants described by the board as follows:
“Being evicted/Lawyer advised a Full Board of Health insp Lead Paint?”
The board investigated and listed numerous repairs that were needed.
1. Provisions of G. L. c. 239, § 8A, were not met. Under G. L. c. 239, § 8A, as inserted by St. 1977, c. 963, a tenant may preclude a landlord from recovering possession either for nonpayment of rent, or in instances where the tenancy has been terminated without fault of the tenant, if the premises are “in violation of the standard of fitness for human habitation established under the state sanitary code . . . and that such conditions may endanger or materially impair the health, safety or well-being of a person occupying the premises . . . .” However, if any of four statutory provisions are met, the tenant is not entitled to relief under § 8A. One such proviso is where the landlord shows that “the conditions complained of cannot *826 be remedied without the premises being vacated.”[3] G. L. c. 239, § 8A, as appearing in St. 1987, c. 773, § 15.
In view of the extensive renovations proposed by the landlord as set forth in his letters of April and June, and the absence of any claim or even hint that the projected improvements were a ruse or not intended in good faith, the tenants cannot rely upon c. 239, § 8A, to deny recovery of possession. We do not read the statute as precluding a landlord from determining in good faith that the required repairs are so extensive that the conditions constituting violations can not reasonably be remedied without causing the premises to be vacated, and that it makes economic sense to gut all the apartments. In these circumstances, the assertion of violations of the State Sanitary Code may not be relied upon to bar the landlord from recovering possession of his premises.
For this reason, the tenants had no legal right to remain in the apartment after the thirty-day period stated in the notice to quit received by them on June 18. They were also not entitled to multiple damages under G. L. c. 93A, as the record does not support a “knowing or wilful disregard of the conditions in the apartment” or a bad faith refusal to respond to the tenant’s complaints. See Cruz Mgmt. Co. v. Thomas, 417 Mass. 782, 791 (1994).
2. Measure of damages. The landlord argues that the measure of damages used by the judge was incorrect and that he erroneously precluded the landlord from showing that the contract rent was equal or close to the fair rental value of the premises in their current unrepaired condition. There was no error. The circumstance that a tenant paid “less . . . than . . . full value [of a dwelling] as warranted is not controlling .... A landlord cannot nullify the implied warranty of habitability ... by giving his tenant a discount in rent.” Haddad v. Gonzales, 410 Mass. 855, 872 (1991). Similarly, here the plaintiff is not entitled to show that the contract rent was not in excess of the fair market value of the apartment in its defective condition. The judge of the Housing Court, experienced in housing matters, heard evidence of the conditions of the apartment. His finding that the breach of the implied warranty of habitability reduced the value of the tenancy by twenty-five percent on average was not clearly erroneous.
Since we have held that an award of multiple damages under c. 93A is not appropriate, the tenants, on this aspect of the case, are entitled to a $560 offset against the rent due of $1,120.[4]
3. Absence of written agreement as to utilities. The judge was correct in awarding statutory damages of $25 and a reasonable attorney’s fee of $750 for requiring the tenant to pay the electrical charges for heat and hot water without a written agreement. Poncz v. Loftin, 34 Mass. App. Ct. 909, 912 (1993). This was a violation of the State Sanitary Code and an unfair practice under c. 93A. Id. at 910.
4. Conclusion. The matter is remanded to the Housing Court to vacate *827 the judgment for the defendants for possession and for $775, and to enter a new judgment for the defendants in the amount of $215.[5]
Henry J. Lane for the plaintiff.
Henry B. Raphaelson, for the defendants, submitted a brief.

So ordered.

 “I would like to know if it is possible if you could fix the things in my apartment.
Strom [sic] Door — inner Door
Screen Door — outer Door
Stairs
Bath tube [sic]
Toilet — leaking
lights — living room and Kids Room
Lights plugs — all of them
floor — living room
cabnets [sic]”

 The statute has an exception relating to lead paint not relevant in this case. See G. L. c. 239, § 8A, as inserted by St. 1987, c. 773, § 15.

 The plaintiff makes no argument that the amount of rent due from the tenants was different after their right to remain had terminated, and we do not consider whether a different obligation arose thereafter.

 The amount equals $775 less $560, the rent owed after deducting the offset set forth in part 2 of this rescript.