Wright, J.
This is a no-fault summary process action. Judgment was entered for the plaintiff-landlord on his complaint for possession and on the defendant-tenant’s counterclaim for breach of the implied warranty of habitability. The court also awarded $700.00 in rent on a claim waived by the plaintiff prior to trial. The defendant has appealed pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8C.
The defendant resided with his wife and infant daughter in a second-floor apartment he rented for $700.00 per month in a building' owned by the plaintiff at 66 Putnam Street in Somerville. The plaintiff was aware that a child under the age of six occupied the premises because the defendant and his family moved to the second-floor apartment from a smaller, third-floor apartment in the same building. It is undisputed that the defendant regularly paid the rent due each month from the commencement of his tenancy in April, 1998 through the time of trial in January, 1999.
In September, 1998, the defendant’s wife became licensed as a child care provider, and requested a City inspection to ascertain that the apartment satisfied lead paint and other code requirements. On October 19,1998, in order to sell the building as part of his divorce settlement, the plaintiff served the defendant with a notice to quit the premises by November 30,1998.
On November 12,1998, Guy Selfridge (“Selfridge”), an inspector with the Housing Department of the Somerville Board of Health, inspected the premises. In a November 13, 1998 inspection report (“the Report”), Selfridge listed numerous violations of the “Minimum Standards of Fitness for Human Habitation as set forth in the State Sanitary Code,” which included ceiling leaks; broken window sash cords, screening'and window glass; peeling ceiling paint; water stained walls; torn linoleum and unfinished flooring. The Report also stated that there was a determination of “the presence of lead paint in violation of Massachusetts General Laws, *23 Chapter 111, Section 197,”[1] and that such lead paint was found not only on the exterior window sills of the living room and kitchen and on the porch support columns, but also on the exterior and interior window sills of the child’s bedroom. At the time of the inspection, the defendant’s daughter was twelve months old. A November 13, 1998 “Order to Correct Violations,” signed by the Director of the Somerville Health Department and Selfridge and issued to the plaintiff as part of Selfridge’s Report, stated:
Be advised that an agent of the Board of Health has determined certain portions of the aforementioned residential property to be in violation of the State Sanitary Code Chapter II, ‘Minimum Standards of Fitness for Human Habitation,’ 105 Code of Massachusetts Regulations (CMR) 410.750 (J). This violation also constitutes a violation of the Lead Law, Massachusetts General Laws (MGL), Chapter 111, Section 197, and the Regulations for Lead Poisoning Prevention and Control, 105 CMR 460.00.
Conditions exist in this residence which may endanger and/or materially impair the health of the occupants of these premises.
The plaintiff commenced this summary process action on December 14, 1998 to recover possession and $700.00 in rent. By way of affirmative defense and G.L.c. 239, §8 counterclaim, the defendant asserted that the numerous violations of the State Sanitary Code constituted a breach by the plaintiff of the implied warranty of habitability so as to preclude the plaintiffs recovery of possession. The defendant also sought a statutory six month stay of any execution on the ground that any termination of his tenancy was without fault on his part.
At trial, Self ridge authenticated his Report, and testified that he re-inspected the apartment on December 23, 1998 and that the plaintiff had taken no action to remove the lead paint or to correct other Code violations. Plaintiffs counsel cross-examined Selfridge as to his position as a lead paint determinator with the Somer-ville Board of Health and as to the lead paint testing methodology he employed, but offered no affirmative evidence to rebut Selfridge’s Report of the presence of lead paint in violation of G.L.c. Ill, §197. As noted, the court entered judgment for the plaintiff on both the complaint and counterclaim.
1. The trial court’s award to the plaintiff of rent in the amount of $700.00 was error.
On the day of trial, both parties executed an unambiguous written stipulation wherein the plaintiff withdrew his claim for rent and agreed to the dismissal of the same.[2] The stipulation, containing the request for dismissal, was marked “allowed” and signed by the trial judge. It is also clear from the transcript that the court’s attention was directed, at the commencement of trial, to the parties’ stipulation and the plaintiff’s waiver of his rent claim.
The stipulation obviously remained binding on the plaintiff. Pereira v. New *24 England LGN Co., 364 Mass. 109, 114 (1973). There was no request or even suggestion at trial that the stipulation should be discharged because it was improvidently made “or not conducive to justice.” Id. See Malone v. Bianchi, 318 Mass. 179, 182-183 (1945). Further, while a court is generally not bound by the stipulations of the parties, Gechijian v. Richmond Ins. Co., 305 Mass. 132, 144 (1940), the trial judge in this case allowed the plaintiffs waiver and request that his rent claim be dismissed. No evidence was thereafter offered at trial to permit a finding that the defendant owed any unpaid rent. A trial court cannot make a finding on a theory or claim which is neither advanced, nor tried, by the parties, Harrington-McGill v. Old Mother Hubbard Dog Food Co., 22 Mass. App. Ct. 966, 968 (1986), and which is unsupported by the evidence. See generally W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 751 (1993).
2. The court’s judgment for the plaintiff on the defendant’s counterclaim for breach of the implied warranty of habitability was also error.
Pursuant to statute and Massachusetts Regulation, the Report of Somerville Board of Health Inspector Selfridge constituted prima facie evidence of the presence of lead paint in violation of G.L.c. Ill, §197 in the apartment occupied by the defendant, his pregnant wife and their one-year-old daughter. G.L.c. 239, §8A, G.Lc. 111, §195; 105 CMR 460.530. Section 8A of G.L.c. 239 expressly provides:
A copy of an inspection report issued by any [board of health], certified under the penalties of perjury by the official who inspected the premises shall be admissible in evidence and shall be prima facie evidence of the facts stated therein [emphasis-supplied].[3]
As the Report constituted prima facie evidence, the trial judge was required as. a matter of law to make a finding in the defendant’s favor of the presence of lead paint, unless the Report was rebutted by evidence from the plaintiff. Smola v. Higgins, 42 Mass. App. Ct. 724, 727-728 (1997). See generally O’Brion, Russell & Co. v. LeMay, 370 Mass. 243, 245 (1976).
Prima facie evidence, in the absence of contradictory evidence, requires a finding that the evidence is true; the prima facie evidence may be met and overcome by evidence sufficient to warrant a contrary conclusion; even in the presence of contradictory evidence, however, the prima facie evidence is sufficient to sustain the proposition to which it is applicable.
Anderson’s Case, 373 Mass. 813, 817 (1977). See also Simon v. Weymouth Agricultural *25 & Indus. Society, 389 Mass. 146, 151 (1983).
The burden of production rested squarely on the plaintiff to advance evidence sufficient to warrant a finding in his favor on the lead paint issue. Commonwealth v. Pauley, 368 Mass. 286, 290-291 (1975); Hanslin Builder, Inc. v. Britt Develop. Corp., 15 Mass. App. Ct. 319, 323 (1983). The plaintiff failed, however, to present sufficient proof to counter the prima facie effect of Selfridge’s report. His efforts to cast doubt on the conclusiveness or credibility of the Report through his limited cross-examination of Selfridge failed, in this case, to satisfy his evidentiary burden to produce rebuttal evidence.
On this appeal, the plaintiff has merely reiterated his objections to the Report, arguing that it is somehow “ambiguous” or sets forth only de minimis Code violations posing no health hazard to the defendant or his family. These contentions are utterly devoid of merit. The fact that Selfridge did not circle item 1 at the bottom of the Specifications section of the Report[4] did not indicate that he found that no conditions in the apartment endangered the physical well-being of the defendant or his family. If that had been the case, Selfridge would have circled item 2, which he did not do. Obviously, Selfridge merely neglected to complete that portion of the Report form. However, the Order to Correct Violations, issued to the plaintiff and signed by Selfridge on November 13,1999, clearly states that the lead paint conditions in the apartment “may endanger and/or materially impair the health of the occupants of the premises.” Moreover, the fact that lead paint, particularly in the home of a child under age six, poses a dangerous health hazard is established by Massachusetts Regulation. Section 410.750 of the Department of Public Health Regulations, 105 CMR, unequivocally provides:
The following conditions, when found to exist in residential premises, shall be deemed conditions which may endanger or impair the health, or safety and well-being of a person or persons occupying the premises. This listing is composed of those items which are deemed to always have the potential to endanger or materially impair the health or safety, and well-being of the occupants or the public....
Ü) The presence of leadbased paint on a dwelling or dwelling unit in violation of 105 CMR 460.00. Lead Poisoning Prevention and Control. (See M.G.L.c. Ill, §§190-199).
3. “[A] condition which ‘may endanger or materially impair the health or safety and well-being of an occupanf ... is sufficient to violate the warranty of habitability.” Altschuler v. Boston Rent Board, 12 Mass. App. Ct. 452, 457-458 (1981). See also Lynch v. *26 James, 44 Mass. App. Ct. 448, 450 (1998); Spaulding v. Young, 32 Mass. App. Ct. 624, 627 (1992). The defendant presented adequate evidence to sustain his burden of proving a breach of that warranty in this case. Moreover, while the question of breach customarily remains one of fact for the trial court, Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 200 (1973), tire trial judge’s own findings and rulings in this case establish that conditions existed in the apartment in question which not only had the potential to, but actually did, endanger the health and safely of the defendant and his family.[5] The court’s finding is amply supported by the record.
The defendant presented unrebutted prima facie evidence at trial that there were lead paint and other conditions on the premises constituting violations of the “Minimum Standards of Fitness for Human Habitation” as set forth in the State Sanitary Code, and that there was lead paint in violation of G.Lc. Ill, §197, which proscribes the maintenance of dwellings with dangerous levels of lead paint. Such unrebutted prima facie evidence required the trial court to make a finding in the defendant’s favor that lead paint and other Code violations existed in the apartment, and the judge so found. The “Minimum Standards” of the State Sanitary Code “provide a trial court with the threshold requirements that all housing must meet Proof of any violation of these regulations would usually constitute compelling evidence that the apartment was not in habitable condition ... [emphasis supplied].” Boston Hous. Auth. v. Hemingway, supra at 200 n.16. See also Doe v. New Bedford Hous. Auth., 417 Mass. 273, 281 (1994). Further, as a matter of law, 105 CMR 410.750®, lead paint in a dwelling unit is always a condition which may endanger the health or safely of the occupant. Of course, whether any defect or code violation, even the presence of lead paint, actually does endanger health or safety in a particular case, and hence constitutes a breach of the warranty of habitability, is a question of fact for the trial judge or jury. Young v. Patukonis, 24 Mass. App. Ct. 907, 910 (1987); McKenna v. Begin, 5 Mass. App. Ct. 304, 308 (1977). Here, however, the trial judge actually made a finding that the presence of lead paint did endanger health or safety. The court’s finding of a danger to the health and safety of the defendant his pregnant wife and their year-old child was particularly warranted in view of the fact that the lead paint was located, inter alia, on the interior window sills of the child’s bedroom. The court’s finding is also consistent with established legislative policy regarding lead paint in dwellings occupied by children under the age of six based on tire danger posed to the children’s health and safety. See G.Lc. Ill, §195.
Given the court’s finding that there were lead paint and other Code violations in the apartment, and that such conditions actually endangered the health and safety of the defendant and his family, the court erred in concluding that there was no breach of the warranty of habitability. The trial court’s judgment for the plaintiff must be reversed. See Miskolczi v. Wilson, 6 Mass. App. Ct. 861 (1978).
Accordingly, the court’s judgment for the plaintiff is vacated. This case is returned to the trial court for a hearing on the assessment of damages against the plaintiff[6] to be awarded to the defendant on his counterclaim. See, as to assess *27 ment of damages, Knott v. Laythe, 42 Mass. App. Ct. 908, 910 (1997); McKenna v. Begin, supra at 310. Judgment for the defendant for the damages so assessed shall then be entered.
So ordered.

 Section 197 (a) states, in pertinent part: “Whenever a child under six years of age resides in any premises in which any paint, plaster or other accessible structural material contains dangerous levels of lead, the owner shall abate or contain said paint, plaster or other accessible structural materials in accordance with the requirements of subsection (b) or (c) [emphasis supplied].”

 The plaintiffs December 3, 1998 complaint sought rent for the month of December, 1998. The defendant’s answer indicated that his December rent check was cashed by the plaintiff and cleared his bank on December 4,1998. It is undisputed that no rent was in arrears. In allowing defendant’s request for ruling number 12, the trial judge acknowledged that this was a no-fault eviction proceeding.

 There is no merit in the plaintiffs argument that the Report was not entitled to any prima facie effect because it was not “certified.” Certification of the report would have been essential if the document had been offered into evidence without any authentication by the author or the keeper of the City records. However, Self-ridge testified under oath at trial that the Report admitted into evidence was the Report he made and signed of his inspection of the apartment, and that the apartment contained lead paint and other violations of the State Sanitary Code as described in his Report. We note also that while the Report did not bear the seal of the City of Somerville, see G.L.c. 233, §76, Selfridge’s signature on the first two pages of the November 13, 1998 Report, captioned “Specifications,” appears just below the statement: “Sworn and subscribed to under the pains and penalties of perjury that this is a true copy, the inspection report made as of this date and that the above statements are true.” The second Specifications page states: “Lead Paint Status: See attached ‘Order to Correct’” and thus incorporates the remaining pages of the Report. . ' ■.

 The following section appeared at the bottom of the Specifications section of the Report form:
Initial either No. 1 or No. 2 below; initial No. 3 as applicable.
1. One or more of the above violations constitutes a condition which may endanger or materially impair the health or well-being of any tenant residing in the premises.
2. None of the above violations constitutes a condition which may endanger or materially impair the health or well-being of any tenant residing in the premises.
3. The conditions constituting the violations can be remedied without the premises being vacated.
Selfridge circled No. 3, but did not circle either No. 1 or No. 2.

 The trial judge allowed defendant’s request for ruling number 11, which slated: ‘"Violations of the Sanitary Code including illegal levels of lead paint currently exist at the premises which endanger or materially impair the health and safety of the Defendant and the Plaintiff has failed to adequately and timely repair such violations after due notice of their existence.” Although captioned as a request for ruling, request number 11 sought a finding of fact which, as noted, the court granted.

 Shortly before oral argument on this appeal, the plaintiff informed this Division that the property had been sold and moved to substitute the new owner as the plaintiff herein. The motion to substitute is denied. The lead paint and other Code violations which are dispositive of this case existed during the plaintiffs ownership of the leased premises. He remains liable for the damages which will be awarded, after hearing, to the defendant.