Neihaus *v.* Maxwell.

---

ALEXANDER NEIHAUS *vs.* MITCHELL MAXWELL & another.[1]

No. 99-P-882.

Worcester. October 12, 2001. - April 24, 2002.

Present: GREENBERG, DOERFER, & COHEN, JJ.

*Real Property,* Lease. *Landlord and Tenant,* Security deposit, Consumer protection. *Consumer Protection Act,* Landlord and tenant, Unfair or deceptive act, Trade or commerce.

There was no merit to the claim by tenants of a single-family house under a one-year lease that their security deposit was illegally commingled with funds belonging to their landlord and exposed to claims by the landlord's creditors, in violation of G. L. c. 186, § 15B(1)(*e*), and not held in an appropriate, separate bank account, in violation of § 15B(3)(*a*), thereby entitling them to an award of three times the security deposit plus interest, costs, and attorney's fees, pursuant to §§ 15B(6) and 15B(7), where the landlord's real estate agent's method of holding the security deposit did not violate the statute. [560-562]

This court concluded that a landlord who leased his single-family house under a one-year lease was not liable under G. L. c. 93A for alleged multiple violations of G. L. c. 186, § 15B, and regulations promulgated by the Attorney General that designated various security deposit transgressions as unfair and deceptive acts and practices, where the mere fact that the landlord used a professional real estate agent to assist him with the rental did not convert what was a personal, private transaction into a business activity. [562-563]

SUMMARY PROCESS. Complaint filed in the Worcester Division of the Housing Court Department on September 25, 1998.

The case was heard by *John G. Martin,* J.

*Douglas L. Fox* for the defendants.

*Russell Beck* for the plaintiff.

COHEN, J. The plaintiff, Alexander Neihaus, rented his single family house to the defendants, Mitchell and Tiffani Maxwell, for $2,450 per month, under a written lease covering the period

---

[1]Tiffani Maxwell.

from September 1, 1997, to August 31, 1998. What began as a mutually convenient arrangement — Neihaus had a one-year overseas job assignment, and the Maxwells needed temporary housing while their new home was under construction — degenerated into litigation when the Maxwells refused to vacate the house after Neihaus's return and the expiration of the lease term.

On September 25, 1998, Neihaus brought a summary process action against the Maxwells who, in turn, filed a counterclaim alleging violations of G. L. c. 186, § 15B, and G. L. c. 93A. After trial, a judge of the Worcester Housing Court entered judgments for Neihaus on both his complaint and the Maxwells' counterclaim. The present appeal is by the Maxwells from the disposition of their counterclaim. At issue is whether Neihaus and his agent complied with those subsections of G. L. c. 186, § 15B, as amended through St. 1992, c. 133, § 522, which govern the receipt, holding, and return of tenant security deposits by residential landlords.

The pertinent facts may be summarized as follows. At the inception of the lease, the Maxwells paid Neihaus's agent, Hunneman Residential Services, $2,450 representing the last month's rent and another $2,450 as a security deposit against damage to the premises. Hunneman deposited that money into its "Security Deposit Account," a single account at a Massachusetts bank, in which Hunneman held security deposits and last months' rents for all of Hunneman's residential landlord clients.

Hunneman used an internal accounting system which, the trial judge found, was adequate to track the various deposits that were placed in the pooled Security Deposit Account. Hunneman also maintained a separate landlords' operating account into which it deposited the rent received on behalf of Neihaus and from which it paid the expenses associated with Neihaus's property, such as the mortgage, property taxes, water and sewer charges, and repair and maintenance costs.

Although the Maxwells remained in possession after the expiration of the lease and paid rent for August, they failed to make a monthly rent payment for September, 1998. Hunneman, therefore, withdrew the last month's rent from the Security

Deposit Account and used it as payment for the Maxwells' use and occupancy of the property during September. The following month, by court order, the Maxwells made a rent payment of $2,450 for October, as a condition of obtaining a continuance of the summary process trial. On October 22, 1998, the judge ordered that judgment for possession of the property enter for Neihaus; he ruled against the Maxwells on their counterclaims; and he required Neihaus to return the Maxwells' security deposit with interest and to pay the Maxwells interest on the last month's rent that they had advanced at the inception of the lease. It is undisputed that Neihaus promptly made these payments.

The Maxwells' primary contention is that their security deposit was illegally commingled with funds belonging to Neihaus and exposed to claims by Neihaus's creditors, in violation of § 15B(1)(e),[2] and not held in an appropriate, separate bank account, in violation of § 15(B)(3)(a),[3] thereby entitling them to an award of three times the security deposit plus interest, costs and attorney's fees, pursuant to §§ 15B(6) and 15B(7).[4] We agree with the trial judge that the Maxwells' claim is without merit, because Hunneman's method of holding the security deposit for Neihaus did not run afoul of the statute.

[2]"A security deposit shall continue to be the property of the tenant making such deposit, shall not be commingled with the assets of the lessor, and shall not be subject to the claims of any creditor of the lessor or of the lessor's successor in interest, including a foreclosing mortgagee or trustee in bankruptcy; provided, however, that the tenant shall be entitled to only such interest as is provided for in subsection (3)(b)." G. L. c. 186, § 15B(1)(e).

[3]"Any security deposit received by such lessor shall be held in a separate, interest-bearing account in a bank, located within the commonwealth under such terms as will place such deposit beyond the claim of creditors of the lessor, including a foreclosing mortgagee or trustee in bankruptcy, and as will provide for its transfer to a subsequent owner of said property." G. L. c. 186, § 15B(3)(a).

[4]"The lessor shall forfeit his right to retain any portion of the security deposit for any reason, or, in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises if he: (a) fails to deposit such funds in an account as required by subsection (3)." G. L. c. 186, § 15B(6).

"If the lessor or his agent fails to comply with clauses (a), (d), or (e) of subsection 6, the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such

The security deposit provisions of G. L. c. 186, § 15B, are designed to insure that tenant monies are protected from potential diversion to the personal use of the landlord, earn interest for the tenant, and are kept from the reach of the landlord's creditors.[5] These objectives were met in this case. The deposit was placed in a bank account that was maintained separately from the landlord's operating account containing Neihaus's own funds; the accounting system utilized by Hunneman kept track of the deposit, distinguished it from other funds in the account and enabled a proper computation of the interest due to the Maxwells; and, because the security deposit was separately designated in this manner, it could not be attached: a creditor could not make the requisite showing that these separately identified funds were due to Neihaus absolutely and without contingency. See G. L. c. 246, § 24; *Goodspeed's Book Shop, Inc.* v. *State Street Bank & Trust Co.*, 8 Mass. App. Ct. 147, 149 (1979).

Although the Maxwells are correct that last months' rents are, with certain limitations, the property of the landlord, not the tenant,[6] in the circumstances of this case Hunneman's placement of security deposits in a pooled account along with last months' rents did not constitute prohibited commingling. We do not underestimate the importance of the statutory prohibition on commingling, which is often the first step towards personal use of entrusted funds, whether by accident or design. Cf. *Matter of the Discipline of an Attorney*, 392 Mass. 827, 836-837 (1984). But, in this case, whether it was required to do so or not, Hunneman kept last months' rents unavailable for use by or on

payment became due, together with court costs and reasonable attorney's fees." G. L. c. 186, § 15B(7).

[5]The statute is not without benefit to the landlord, as well, since the landlord is entitled to use the funds if the tenant has damaged the premises or has vacated without paying due rent. G. L. c. 186, § 15B(4).

[6]The landlord is not required to set aside the tenant's last month's rent or to place it in a bank account; however, he is required to pay interest on it at five per cent or any lesser rate paid by the bank, if the money is, in fact, deposited. The landlord must give the tenant an annual statement of interest earned and either remit the interest at the end of each year of tenancy or permit the tenant to deduct the interest from the next rental payment. If the tenancy is terminated before its anniversary date, the landlord must pay the accrued interest within thirty days of the termination to avoid exposure to liability for treble damages, costs, and attorney's fees. G. L. c. 186, § 15B(2)(*a*).

behalf of the landlord until due and owing, at which time they were transferred out of the Security Deposit Account. Thus, the risk inherent in commingling — that a landlord might intentionally or inadvertently use tenant funds when accessing the commingled account to pay operating or other personal expenses — simply did not exist here.

The Maxwells also claim that Neihaus was required to return their security deposit within thirty days of the expiration of the written lease on August 31, 1998, even though they remained in possession of the property until the end of October. This, they argue, was a violation of G. L. c. 186, § 15B(6)(e).[7] Again, we agree with the trial judge that Neihaus's obligation to return the Maxwells' security deposit within thirty days did not arise at the expiration of the written lease but, rather, when they relinquished possession.

An important purpose of security deposits is "to provide a source of funds for the payment of the cost of repairs for which a tenant is responsible." *Jinwala* v. *Bizzaro*, 24 Mass. App. Ct. 1, 7 (1987). It would not be in keeping with this purpose were the statute interpreted to require return of a security deposit before the tenant vacates the premises. It also would be incongruous to confer upon tenants at sufferance, like the Maxwells, greater rights than accrue to tenants at will, who are not due their security deposits until thirty days after the termination of their occupancy of the premises.

Finally, the Maxwells contend that Neihaus is liable under G. L. c. 93A for alleged multiple violations of G. L. c. 186, § 15B, and regulations promulgated by the Attorney General that designate various security deposit transgressions as unfair and deceptive acts and practices. See 940 Code Mass. Regs.

---

[7] "The lessor shall forfeit his right to retain any portion of the security deposit for any reason, or, in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises if he: . . . (e) fails to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting therefrom any sums in accordance with the provisions of this section, together with any interest thereon, within thirty days after termination of the tenancy." G. L. c. 186, § 15B(6).

Also pertinent is § 15B(4): "The lessor shall, within thirty days after the termination of occupancy under a tenancy-at-will or the end of the tenancy as specified in a valid written lease agreement, return to the tenant the security deposit or any balance thereof."

§ 3.17 (1993). It may be that Neihaus and Hunneman were not fully in compliance with law in one respect: neither provided the Maxwells with the name or location of the account containing the Maxwells' security deposit, as required by G. L. c. 186, § 15B(3)(*a*), and 940 Code Mass. Regs. § 3.17(4)(d) (1993). Even if c. 93A otherwise provides a remedy for this misstep, and we need not so decide, Neihaus nevertheless cannot be liable under that statute, because he was not engaged in trade or commerce with respect to the isolated rental of his home while he was temporarily living overseas. See *Lantner* v. *Carson*, 374 Mass. 606, 610-611 (1978); *Billings* v. *Wilson*, 397 Mass. 614, 615-616 (1986); *Young* v. *Patukonis*, 24 Mass. App. Ct. 907, 910 (1987). The mere fact that he used a professional real estate agent to assist him with the rental did not convert what was patently a personal, private transaction into a business activity. See *Lantner* v. *Carson, supra.*

The judgment for Neihaus on the Maxwells' counterclaim is therefore affirmed.

*So ordered.*