APPEALS COURT 
 
 133 WEST MAIN STREET REALTY, LLC vs. ALLEN KIMBALL & another[1]

 
 Docket:
 24-P-245
 
 
 Dates:
 October 8, 2024 – February 14, 2025
 
 
 Present:
 Neyman, Singh, & Toone, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Summary Process. Practice, Civil, Summary process, Consumer protection case, Damages, Interest. Consumer Protection Act, Landlord and tenant, Trade or commerce. Landlord and Tenant, Consumer protection, State sanitary code. State Sanitary Code. Damages, Interest. Interest. Statute, Construction.
 
 

       Summary Process.  Complaint filed in the Northeast Division of
the Housing Court Department on June 26, 2023. 
      The case was heard by Gustavo A. del
Puerto, J. 
Michael Brier for
the landlord.
Timothy H. Barnes
for the tenants.
      NEYMAN, J. 
The plaintiff, 133 West Main Street Realty, LLC (hereafter, 133 West
Main or landlord), brought a summary process action to recover possession of a
premises located at 133 West Main Street in Merrimac and damages for unpaid
rent.  The defendants, Allen and Ashley
Kimball (referred to individually by their first names and collectively as the
Kimballs or tenants), filed an answer asserting various affirmative defenses
and counterclaims.  Following a trial in
the Housing Court, a judgment issued awarding the landlord unpaid rent and
costs and awarding the tenants possession along with damages for a violation of
the State sanitary code and G. L. c. 93A (c. 93A), breach of the
implied warranty of habitability, and partial attorney's fees under
c. 93A.  On appeal, we consider
whether the judge erred in (1) determining that the rental activity in which the
landlord was engaged constituted "trade or commerce" within the
meaning of G. L. c. 93A, § 2; (2) awarding actual rather than
nominal damages for the c. 93A violation predicated on the State sanitary
code violation; and (3) failing to add interest to the landlord's back rent
award under G. L. c. 239, § 8A. 
We affirm in part, vacate in part, and remand.
      Background.  We recite the trial judge's relevant findings
of fact, supplemented with undisputed evidence from the record.  Allison v. Eriksson, 479 Mass. 626, 627
(2018).  The premises consists of a 4,000
square foot, three-story, single-family house situated on "just over"
four acres of land.  The house has eight
rooms, four bedrooms, and a "few baths."  In January 2009, Daniel K. Mayer purchased
the premises and, in December 2012, conveyed it to 133 West Main, which owns
and leases the premises.  Mayer also
operates Mayer Tree Service.  Mayer and
Dickran Babigian, the "CFO" of Mayer Tree Service, manage 133 West
Main and "various properties," including residential and commercial
real estate.[2]
      Allen began working for Mayer Tree Service
in or around 2003.  In 2009, Mayer
allowed Allen to move into the premises because Allen was separating from his
first wife and needed a place to live.[3] 
There was no written lease agreement, and for the first four years of
the tenancy, Mayer did not charge Allen rent. 
Since the inception of the tenancy, Allen agreed to pay for the
utilities (electricity, water, and sewer) at the premises.[4]
      In 2013, Ashley, Allen's girlfriend at the
time, moved into the premises.  Beginning
in 2014, Allen began paying rent in the amount of $175 per week.  That amount was deducted from Allen's
paycheck from Mayer Tree Service.  In or
around July 2017, the rent was increased to $280 per week, and it was still
paid as a weekly deduction from Allen's paycheck.
      In 2021, the now-married Kimballs learned,
through a pediatrician, that their young daughter's "lead level" was
high.  As a result, the Commonwealth
conducted an inspection, and on December 10, 2021, the landlord learned of the
presence of lead paint at the premises. 
133 West Main paid for the remediation of the lead paint, which was
"abated as of March 20, 2022." 
For approximately two weeks, while the remediation was ongoing, Mayer
Tree Service paid for the Kimballs to stay at a hotel.
      The Kimballs made their final rent payment
in late January 2022, and as of February 5, 2022, were behind on rent.  On June 26, 2023, 133 West Main commenced the
present summary process action against the Kimballs.  On August 24, 2023, the Kimballs filed their
answer and counterclaims alleging breach of the warranty of habitability,
breach of the covenant of quiet enjoyment, misrepresentation, and violation of
c. 93A.  The Kimballs also raised
affirmative defenses including "illegal rental" for failing to obtain
an occupancy permit prior to the tenancy as required by the regulations of the
town of Merrimac, and retaliation.
      On October 16 and 20, 2023, a two-day
bench trial was held in the Housing Court. 
On November 20, 2023, the trial judge issued findings of fact, rulings
of law, and an order for entry of judgment. 
The judge awarded 133 West Main $24,640 in unpaid rent and for the
Kimballs' use and occupancy, and $238.60 in court costs, but he did not award
interest.  On the counterclaims, the
judge awarded the Kimballs damages of $1,680 for 133 West Main's breach of the
warranty of habitability "due to the presence of lead paint at the
[p]remises."  On the c. 93A
counterclaim, the judge found that 133 West Main was "in trade or commerce
with [the Kimballs]," and he awarded the Kimballs $9,487.34 "doubled,
for a total award $18,974.68," for violation of the State sanitary code by
failing to reduce to writing the Kimballs' obligation to pay for utilities,
which the judge found constituted a violation of c. 93A.  The judge also awarded attorney's fees to the
Kimballs in the amount of $1,505 for the c. 93A violation.[5]  The judge concluded that 133 West Main's
violation of the State sanitary code did not interfere with the Kimballs' quiet
enjoyment of the premises and denied relief on that claim, as well as on the
Kimballs' remaining claims of misrepresentation, retaliation, and illegal
rental.  On December 8, 2023, the judge
issued an amended order for entry of judgment[6] delineating the damages
described above, and ordering that "[i]n accordance with G. L.
c. 239, § 8A, if the [Kimballs] deposit $4,223.92 with the Clerk's
Office of this Court within ten (10) days from the date of this order . . .
, judgment shall enter for the [Kimballs] for possession and the monies will be
disbursed by the Court to [133 West Main]" (emphasis in original).  The Kimballs paid the required deposit, and
on December 21, 2023, judgment for the Kimballs entered.  133 West Main filed a timely notice of
appeal.
      Discussion.  1. 
General Laws c. 93A trade or commerce.  133 West Main first contends that the judge
erred in finding that it was engaged in trade or commerce within the meaning of
c. 93A.  For the reasons discussed
below, we disagree.
      General Laws c. 93A, § 2,
proscribes "unfair or deceptive acts or practices in the conduct of any
trade or commerce."  Although the
statute does not specifically define the phrase "in the conduct of any
trade or commerce," the Supreme Judicial Court has explained that it
"must be read to apply to those acts or practices which are perpetrated in
a business context."  Lantner v.
Carson, 374 Mass. 606, 611 (1978).  See
Sullivan v. Five Acres Realty Trust, 487 Mass. 64, 69 (2021), quoting Lantner,
supra at 607-608, 611 ("trade or commerce" provision of G. L.
c. 93A, § 2, "is intended to apply to individuals acting in a
business context and is therefore not applicable 'where the transaction is
strictly private in nature, and is in no way undertaken in the ordinary course
of a trade or business'").[7] 
Whether the conduct at issue occurred in a business context "must
be determined from the facts of each case" and requires a court to
"examine the nature of the transaction, the character of the parties involved,
and the activities engaged in by the parties."  Billings v. Wilson, 397 Mass. 614, 616
(1986).  Ultimately, where the landlord
is "in the trade or business of providing rental housing, G. L.
c. 93A is implicated."  Poncz
v. Loftin, 34 Mass. App. Ct. 909, 910 (1993). 
Chapter 93A "may apply in some cases where the transaction does not
concern the principal business of the defendant"; however, courts
"should [also] examine whether the transaction is motivated by business or
personal reasons."  Billings, supra.
      In the present case, 133 West Main argues
that it was not acting in trade or commerce because Mayer allowed Allen to
reside at the premises as a friendly gesture; Allen lived there rent free for
four years; 133 West Main subsequently charged Allen rent below market rate;[8]
133 West Main did not generate a profit from the rental of the premises; and
there was no evidence that 133 West Main ever received any material financial
benefit from the rental of the premises. 
The argument has some facial appeal. 
See, e.g., Billings, 397 Mass. at 616 ("in the circumstances here,
concerning the rental of a dwelling unit in an owner-occupied two-family house,
where the landlord owns no other rental real property, c. 93A is not
applicable"); Neihaus v. Maxwell, 54 Mass. App. Ct. 558, 563 (2002)
(homeowner not liable under c. 93A "because he was not engaged in
trade or commerce with respect to the isolated rental of his [single-family]
home while he was temporarily living overseas"); Young v. Patukonis, 24
Mass. App. Ct. 907, 910 (1987) ("owner-occupant of a three-family
building, whose primary objective is personal, is not subject to G. L.
c. 93A").  Nevertheless, under
the particular facts of this case, we cannot conclude that the judge erred in
determining that 133 West Main was "in trade or commerce with [the
Kimballs]."
      First, unlike in Billings, 397 Mass. at
616, and Patukonis, 24 Mass. App. Ct. at 910, there was no owner-occupant
involved in the rental, as the premises was owned by 133 West Main, a limited
liability company (LLC), and there is no evidence in the record that either
Mayer (or any of the LLC's managers) ever lived there.  See Linthicum v. Archambault, 379 Mass. 381,
387 (1979) (plaintiff acting in business context within meaning of c. 93A
where she was using entire house as rental property when she contracted with
defendant to reshingle roof of home). 
Second, while it appears that 133 West Main did not own any additional
properties apart from the premises, it was not an isolated rental property.  Contrast Billings, supra at 614
("landlord owns the house and occupies the second-floor apartment.  It is clear from the briefs of both parties
that this one apartment is the only rental property with which the landlord is
concerned"); Neihaus, 54 Mass. App. Ct. at 563 (personal residence rented
out by homeowner while he temporarily traveled overseas).  Rather, it is undisputed that Mayer (and
Babigian) managed and leased numerous single and multifamily residential
properties as well as commercial properties.[9] 
Third, on behalf of 133 West Main, Babigian worked with the Kimballs to
resolve issues, paid bills, and comanaged the premises, in addition to his role
managing other properties owned or operated by or through Mayer.  Fourth, the Kimballs were not the first or
only tenants to occupy the premises. 
Indeed, at Mayer's request, Allen removed the personal property of the
prior tenants because they had stopped paying rent.  Finally, 133 West Main is itself an LLC.  Of course, that status alone does not
establish that 133 West Main operated in trade or commerce under
c. 93A.  See Sullivan, 487 Mass. at
69; Wodinsky v. Kettenbach, 86 Mass. App. Ct. 825, 833-834 (2015).  See also Billings, supra at 616 ("the
character of the parties involved" is one factor in ascertaining whether
conduct occurred in business context). 
However, viewed in conjunction with the other factors discussed above,
it is suggestive of a business context in this case.
      The above-referenced evidence demonstrated
that 133 West Main, managed by and through Mayer and Babigian, was "in the
trade or business of providing rental housing"; that what may have
commenced as a transaction motivated by personal reasons morphed into one
occurring in a business context; and that c. 93A applies.  Poncz, 34 Mass. App. Ct. at 910.  Thus, the totality of factors was sufficient
to support the judge's conclusion that 133 West Main was "in trade or
commerce" with the Kimballs.
      2. 
Damages for violation of State sanitary code.  The judge found that 133 West Main's failure
to reduce to writing the Kimballs' obligation to pay for utilities at the
premises violated the State sanitary code and thus was an unfair practice under
c. 93A.  For this violation, the
judge awarded the Kimballs actual damages of $9,487.34, doubled for a total
award of $18,974.68, plus a reasonable attorney's fee.  133 West Main does not challenge the judge's
findings of violations, nor could it. 
The State sanitary code protects "the health, safety, and
well-being of occupants and the general public" by requiring the owner of
a dwelling to provide water, sewer, and gas or electricity absent a written
agreement for them to be provided by the occupant.  105 Code Mass. Regs. §§ 410.001(A), 410.130(C)(3),
410.200(A)(2) (2023).[10]  In turn any
act or practice that "fails to comply with" laws or regulations
"meant for the protection of the public's health, safety, or welfare"
is a violation of c. 93A.  940 Code
Mass. Regs. § 3.[16](3) (1993).  133
West Main argues instead that where there was no violation of the covenant of
quiet enjoyment or diminution of the fair rental value of the premises, it was
error to award actual damages.  We agree.
      Our court addressed this very issue in
Poncz, 34 Mass. App. Ct. at 911.  There,
we considered whether actual damages should have been awarded to a tenant for a
landlord's violation of the State sanitary code where, "without any
written agreement, [the landlord] required the tenant to pay the electrical
charges for his heat and hot water throughout his occupancy."  Id. at 910. 
We held that where "[t]he essence of the violation . . .
was the failure to reduce the oral agreement to writing," and where the
tenant did not prove actual damages, "only nominal damages may be
recovered."  Id. at 911.  Critical to our holding, we noted that the
State sanitary code violation, which constituted "an unfair practice in
violation of G. L. c. 93A," did not render the premises
defective or uninhabitable.  Id. at 910,
911.  We further recognized certain
additional circumstances that tenants could prove (in addition to the
landlord's failure to reduce to writing the agreement to pay utilities) to
sustain an award of actual damages.  Id.
at 911.  Specifically, we stated that:
"Damages,
possibly multiple, might have been recoverable had the tenant proved that the
landlord had failed to provide adequate heating facilities . . . or
that the arrangement actually had a negative impact on his use and enjoyment of
the premises.  Damages might also have
been recoverable had the tenant shown that he had objected to the arrangement
during the tenancy, that the rent and the cost of the utilities, together, were
more than the fair rental value of the premises, or that there was a meter
violation by the landlord" (footnotes omitted).  
Id.  As in Poncz, the violation of the State
sanitary code in the present case, which likewise constituted a violation of
c. 93A, involved the same failure to reduce to writing the tenant's
agreement to pay for utilities.
      The Kimballs acknowledge the applicability
of Poncz, 34 Mass. App. Ct. at 911, but claim that some of the above-noted
circumstances applied here.  Initially,
the Kimballs argue that "the arrangement actually had a negative impact on
[their] use and enjoyment." 
Id.  This argument fails where the
judge found that the Kimballs "agreed to pay for the utilities since the
inception of the tenancy"; that 133 West Main had not "breached the
covenant of quiet enjoyment in this case"; and that the Kimballs'
obligation to pay for utilities without a written agreement did not constitute
a violation of their quiet enjoyment of the premises.  These explicit findings refute any suggestion
that the Kimballs' obligation to pay for utilities interfered with their use
and enjoyment of the premises.
      The Kimballs also contend that 133 West
Main failed to provide adequate heating facilities.  This argument likewise fails for several
reasons.  First, the judge made no such
finding.  Second, the argument ignores
the explicit determination that the violation of the State sanitary code and
c. 93A for failing to reduce to writing the Kimballs' obligation to pay
for utilities did not constitute a violation of the Kimballs' quiet enjoyment
of the premises.[11]  Third, the Kimballs
point to evidence at trial to the effect that on moving into the premises in
2009, Allen had to use space heaters and fix the heating system;[12] the
Kimballs experienced various electrical issues such as "breakers
popping"; and other heating issues arose during their tenancy.  Here again, the judge's findings either
contradict these claims or do not support them.[13]
      Next, the Kimballs contend that the amount
they paid in rent and utilities "far exceeded the rental value of the
premises."  See Poncz, 34 Mass. App.
Ct. at 911.  Here, the Kimballs did not
provide any evidence at trial to show that the amount they paid in rent and
utilities exceeded the fair rental value of the premises.  The judge made no such finding, and moreover,
the only evidence at trial regarding the fair rental value of the premises was
Babigian's testimony that the premises could have been rented for approximately
$4,000 to $5,000 per month.
      Finally, it is undisputed that the judge's
award of actual damages -- $9,487.34 -- was the exact amount the Kimballs paid
for water and sewer utilities, as reflected by the invoices and payments
introduced at trial and through Ashley's testimony.[14]  In addition, the judge's award of actual
damages did not include the amount that the Kimballs paid for electrical
utilities.[15]
      In short, where (1) the sole basis for the
violation of c. 93A was the technical violation of the State sanitary
code, (2) the Kimballs agreed to pay for utilities since the inception of the
tenancy, and (3) the judge made an explicit and repeated finding that this violation
did not constitute a breach of the covenant of quiet enjoyment, the judge erred
in awarding actual rather than nominal damages. 
Poncz, 34 Mass. App. Ct. at 911-912. 
See Youghal, LLC v. Entwistle, 484 Mass. 1019, 1023 (2020) (no error by
judge in awarding nominal damages and reasonable attorney's fees to tenants for
landlord's violation of State sanitary code where lack of written agreement
concerning payment of utilities did not violate covenant of quiet enjoyment);
Knott v. Laythe, 42 Mass. App. Ct. 908, 910 (1997) ("judge was correct in
awarding statutory damages of $25 and a reasonable attorney's fee" for
requiring tenant to pay electrical charges for heat and hot water without
written agreement, which constituted violation of State sanitary code and
unfair practice under c. 93A).  See
also Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013) (invasion of
consumer's legal right without more "does not necessarily mean the
consumer has suffered an injury or a loss entitling her to at least nominal
damages and attorney's fees;" rather "a plaintiff bringing an action
for damages under c. 93A, § 9, must allege and ultimately prove that
she has, as a result, suffered a distinct injury or harm that arises from the
claimed unfair or deceptive act itself"). 
Contrast Wolfberg v. Hunter, 385 Mass. 390, 397-398 (1982) (discussing
calculation of actual damages award for landlord's violation of c. 93A in
case involving rodent infestation that created "substantial interference
with the use and enjoyment of the apartment" leased by tenants).
      The findings of a violation of the State
sanitary code and corresponding liability under c. 93A are affirmed, as is
the judge's award of attorney's fees for the c. 93A violation.  See Youghal, LLC, 484 Mass. at 1023.  The amount of damages for the underlying
violation, however, along with any multiplying under c. 93A, must be
vacated and remanded to the Housing Court for recalculation.[16]
      3. 
Statutory interest.  In the
amended order for entry of judgment, the judge declined to add interest to the
landlord's award under G. L. c. 239, § 8A.  Instead, the judge ordered that the Kimballs
would have to pay interest only if they failed to make the $4,223.92 deposit
required under G. L. c. 239, § 8A.  133 West Main argues that the judge erred in
this regard.  We agree.
      "Our primary duty in interpreting a
statute is 'to effectuate the intent of the Legislature in enacting
it.'"  Commonwealth v. Sabin, 104
Mass. App. Ct. 303, 305 (2024), quoting Commonwealth v. Sousa, 88 Mass. App.
Ct. 47, 49 (2015).  "The language of
the statute is the starting point for all questions of statutory
interpretation."  Sabin, supra,
quoting Bank of N.Y. Mellon v. Morin, 96 Mass. App. Ct. 503, 507 (2019).  "Statutory language should be given
effect consistent with its plain meaning. 
Where . . . that language is clear and unambiguous, it is
conclusive as to the intent of the Legislature."  Bank of N.Y. Mellon, supra, quoting Patriot
Resorts Corp. v. Register of Deeds for the County of Berkshire, N. Dist., 71
Mass. App. Ct. 114, 117 (2008).
      The relevant portion of G. L.
c. 239, § 8A, provides:
"[i]f the
amount found to be due the landlord exceeds the amount found to be due the
tenant or occupant, there shall be no recovery of possession if the tenant or
occupant, within one week after having received written notice from the court
of the balance due, pays to the clerk the balance due the landlord, together
with interest and costs of suit."  
The plain
language of the statute provides for the inclusion of interest without
exception.  Because the judge here
determined after trial that the amount due to 133 West Main exceeded the amount
due to the Kimballs, the statute required the Kimballs to pay to the clerk the
balance due "together with interest."  G. L. c. 239, § 8A.  That amount should be calculated in the
present case from June 26, 2023, the date that the landlord commenced the
action.  See G. L. c. 231,
§ 6C.[17]  This portion of the
judgment also must be vacated and remanded.
      Conclusion.  For the reasons set forth above, we affirm in
part and vacate in part the judgment entered December 21, 2023.  So much of the judgment that awarded damages
to the Kimballs for 133 West Main's violation of the State sanitary code, and
correspondingly under c. 93A, is vacated, as is the portion of the
judgment awarding the landlord back rent without interest.  Those issues are remanded to the Housing
Court for recalculation as set forth in this opinion.  In all other respects, the judgment is
affirmed.[18]
So ordered.

footnotes

[1] Ashley
Kimball.

[2] Mayer also
testified that he and his wife manage 133 West Main but did not testify as to
what her role in the management entailed.

[3] The judge
found that Allen was a tenant at will at the premises since November of
2008.  This appears to be an error, as
the evidence at trial was that Allen moved into the premises in 2009.

[4] In 2009, when
Allen moved into the premises, there were problems with the heat that required
Allen to use space heaters.  Shortly
thereafter, Allen notified Mayer about a broken hot water heater.  Mayer told Allen that if he "wanted to
start paying rent, that he'd have it taken care of."  Allen opted to fix the hot water heater
himself.

[5] The judge
determined the amount of attorney's fees after receiving posttrial submissions
from the parties.

[6] The amended
order for entry of judgment corrected a calculation error in the original order
for entry of judgment.

[7] General Laws
c. 93A, § 1 (b), defines trade and commerce to
"include" the "rent or lease" of real property.  Insofar as there is no dispute that 133 West
Main ultimately rented the premises to the Kimballs, the conduct at issue would
seem to fall within the plain language of the statute.  See McGrath v. Mishara, 386 Mass. 74, 86
(1982) ("The protection of c. 93A clearly extends to lessors of real
property, see G. L. c. 93A, § 9 [1], and thus to the
landlord-tenant relationship"). 
However, as the Supreme Judicial Court has clarified, such is not always
the case because § 1 of the statute must be read together with § 2,
which requires us to consider whether the act or practice at issue occurred in
a business context.  See Lantner, supra
at 608-611.

[8] As detailed
above, Allen lived at the premises rent free for approximately four years.  It is undisputed, however, that the Kimballs
later paid rent to 133 West Main from 2014 to 2022.

[9] There is no
dispute that Mayer purchased the premises in 2009, transferred the premises to
133 West Main in late 2012, and at all relevant times, managed 133 West Main
and other residential and commercial properties.

[10] During the
Kimballs' tenancy these provisions were located at 105 Code Mass. Regs.
§ 410.001 (1997) and 105 Code Mass. Regs. § 410.354 (2005).

[11] The judge
did find that 133 West Main violated the implied warranty of habitability due
to the presence of lead paint in the home and awarded damages for that breach.  However, it is clear from the judge's
findings and rulings that the breach of the implied warranty was limited to the
lead paint issue and did not pertain to the c. 93A violation that is the
subject of this appeal.  Indeed, neither
party addresses the judge's implied warranty of habitability determination, and
the Kimballs do not claim in their appellate brief that that violation could
have served as the basis for the c. 93A damage award.  Such an argument would have been futile, in
any event, where the judge explicitly found that (1) the c. 93A violation
stemmed from the failure to reduce the Kimballs' agreement to pay utilities to
writing, and (2) this violation did not constitute a violation of the covenant
of quiet enjoyment.

[12] It is
undisputed that the Kimballs did not begin paying rent until "[a]fter the
heating unit was fixed downstairs."
      
[13] Allen
testified at trial that at some point the hot water heater ceased working for a
second time, but he did not inform 133 West Main or Mayer about it.  Ashley also testified to certain electrical
issues that arose, but she likewise testified that she did not relay those
concerns to 133 West Main or Mayer.  See
G. L. c. 239, § 8A ("Whenever any counterclaim or claim of
defense under this section is based on any allegation concerning the condition
of the premises or the services or equipment provided therein, the tenant or
occupant shall not be entitled to relief under this section unless:  [1] the owner or his agents, servants, or
employees, or the person to whom the tenant or occupant customarily paid his
rent knew of such conditions before the tenant or occupant was in arrears in
his rent").     

[14] As noted
above, the judge doubled the $9,487.34 award to $18,974.68.

[15] The judge's
findings do not specify why he chose not to include the Kimballs' payments for
electrical utilities as part of the award of actual damages for the c. 93A
violation.  We note, however, that there
was evidence at trial that Allen operated a marijuana "growth
facility," characterized by Mayer as a "major operation," in the
basement of the premises.  Mayer
testified that the "operation" involved multiple lights and consumed
approximately thirty percent of the thirteen hundred square foot basement.  Allen acknowledged at trial that he grew
marijuana in the basement of the premises "for a couple months
. . . to have a little fun" and agreed that it required a "significant
amount of electricity."

[16] In view of our
determination that the award of actual damages for the violation of c. 93A
cannot stand, the award of multiple damages likewise cannot stand, and we need
not address 133 West Main's claim of insufficient evidence that the violation
was willful and knowing.  See Leardi v.
Brown, 394 Mass. 151, 163 (1985), abrogated in part by Tyler, 464 Mass. at
501-503 ("Because the Legislature has determined that an award of $25
suffices as nominal damages, it would be incongruous and inconsistent with that
determination to infer that in any circumstances the Legislature intended that
the nominal sum should be multiplied"). 
See also Lord v. Commercial Union Ins. Co., 60 Mass. App. Ct. 309, 313
n.6 (2004), citing Leardi, supra at 162-163 ("The judge originally awarded
$50 in damages, doubling the statutory minimum of $25 because she found that
the defendant's violation was 'knowing.' 
On the defendant's motion for partial reconsideration on the ground that
the statutory damages were not subject to multiplication, the judge reduced the
award to $25").

[17]
"General Laws c. 231, § 6C, provides that prejudgment interest
is awarded 'from the date of the breach or demand,' if established, but
otherwise from the date of the commencement of the action."  Aronovitz v. Fafard, 78 Mass. App. Ct. 1, 10
(2010).  Here, the judge did not make any
findings regarding the "date of the breach or demand," but he
explicitly found that 133 West Main "commenced this action by serving a
summary process summons and complaint upon [d]efendants . . . on June
26, 2023."

[18] The Kimballs
have requested attorney's fees pursuant to c. 93A.  See Yorke Mgt. v. Castro, 406 Mass. 17, 20
(1989).  In the present case, where the
Kimballs have prevailed on their c. 93A claim and we are remanding only
for recalculation of damages, a partial award of fees is warranted.  See Northern Sec. Ins. Co. v. R.H. Realty
Trust, 78 Mass. App. Ct. 691, 698 (2011). 
Accordingly, pursuant to the procedure set forth in Fabre v. Walton, 441
Mass. 9, 10-11 (2004), the Kimballs may file an application for appellate
attorney's fees within fourteen days of this decision, along with supporting
documentation, after which the landlord shall have fourteen days within which
to respond.